# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01787-COA

**KEITH O'BRIEN**                                                      **APPELLANT**

**v.**

**ANDY J. ALFONSO, III**                                              **APPELLEE**

DATE OF JUDGMENT:                 11/17/2016
TRIAL JUDGE:                      HON. JAYE A. BRADLEY
COURT FROM WHICH APPEALED:        JACKSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:           COURTNEY PARKER WILSON
ATTORNEY FOR APPELLEE:            ANDY J. ALFONSO III (PRO SE)
NATURE OF THE CASE:               CIVIL - LEGAL MALPRACTICE
DISPOSITION:                      REVERSED AND REMANDED - 02/27/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**CARLTON, J., FOR THE COURT:**

¶1.    Keith O'Brien filed a complaint to confirm and quiet title, set aside deed, or, in the alternative, reform deed, and for damages against Michael Rogers, Mary Ann Rogers, real-estate attorney Andy J. Alfonso III, Coldwell Banker Alfonso Realty Inc., and Cheryl O'Brien (collectively, the Defendants).  Keith's complaint also included a claim of legal malpractice against Andy.  After a trial, the Jackson County Chancery Court entered a judgment denying relief.

¶2.    Keith now appeals the chancellor's judgment and argues that the chancellor erred in finding that Keith failed to prove that Andy committed legal malpractice in preparing an allegedly erroneous warranty deed conveying Keith's property.  Finding error, we reverse and

remand to the chancery court for a determination of damages.

**FACTS**

¶3.     In 1998, Keith and his then-wife, Cheryl, purchased 8.9 acres in Jackson County, Mississippi, and constructed a house on the property.  The physical address for the house is 6331 Jim Ramsey Road.

¶4.     In January 2005, Keith and Cheryl decided to sell their house located at 6331 Jim Ramsey Road, along with 2.3 acres of land surrounding the house.  Keith and Cheryl listed their house and the acreage with real-estate agent Shirley Willard of Coldwell Banker Alfonso Realty Inc. (Alfonso Realty).  The property listing prepared by Shirley reflects a listing price of $198,500 for the 2,400 square foot, three bedroom, 2.5 bathroom house and the 2.3 acres of land.

¶5.     After listing their house and the 2.3 acres for sale, Keith and Cheryl conveyed 1.23 acres of their remaining property to their daughter and son-in-law, Khristina and Scott Storm, via a quitclaim deed on May 17, 2005.  The record shows that this 1.23-acre parcel of land was located in the middle of the 8.9 acres owned by Keith and Cheryl.  In deeding the land to the Storms, Keith had the entire 8.9 acres surveyed and then divided into three parcels, each with a different address.  For the 1.23-acre parcel of land he deeded to the Storms, Keith established an address of 6325 Jim Ramsey Road.  Keith testified that he filed the quitclaim deed and survey in the land records.

¶6.     The record also reflects that Keith and Cheryl intended to keep the remaining back parcel of land, which consisted of five acres, and build another house.  Keith established the

2

address of 6327 Jim Ramsey Road for the remaining five acres of land.

¶7.    Keith testified that about a month after he and Cheryl deeded the 1.23 acres to the Storms, he received a call from Shirley informing him that she had found a buyer for Keith and Cheryl's house and 2.3 acres.  Keith and Cheryl eventually accepted an offer from Michael and Mary Ann Rogers.  The record reflects that Mary Ann is Shirley's niece.

¶8.    Alfonso Realty recommended that Keith retain Andy to prepare the real-estate contract and deed and execute the loan closing on the property.[1]  Keith and Andy both testified that they had never spoken to one another prior to the closing in July 2005.  The record shows that Shirley communicated with Keith and Andy separately regarding the real-estate transaction.  Keith testified that at the closing, he signed the papers provided to him, including the warranty deed prepared by Andy.  Keith stated that when he was presented with the warranty deed to sign, no one explained to him what he was conveying through signing the deed.

¶9.    As we will discuss in length later in this opinion, Andy admitted that an attorney-client relationship existed between him and Keith and the Rogers family.  Andy's trial testimony reflects that he failed to discover that Keith had previously deeded the 1.23-acre middle parcel to the Storms.  At trial, Andy testified regarding his title search on Keith's property as follows:

> Q.    When you did your title search, did it not pop up the fact that [Keith], prior to the loan closing, didn't actually own the entire 8.9 acres?
>
> A.    I'd have to go back, but there should have probably been a less

---

[1] The record reflects that Andy has no affiliation with Alfonso Realty.

and—well, not probably. **There should have been a less and except for that one point something acres, the Storm property in the middle. That should have appeared on the deed.**

Q. But you didn't catch that and put that on the deed?

A. I'm not sure if I did or didn't.

Q. You've . . . still got the [w]arranty [d]eed?

A. I do. Yea[h]. **It's not in the deed. The less and except is not there.**

(Emphasis added).

¶10. Keith testified at trial that at the end of 2006, the Rogers family contacted him and complained that they were paying higher-than-normal property taxes for the house and 2.3 acres located at 6331 Jim Ramsey Road. The Rogerses eventually discovered that due to a mistake in the deed, they were paying property taxes for the entire 8.9 acres of property. The record additionally shows that concurrent with the closing of the property, the Rogerses' first deed of trust and first mortgage had already attached to the property.

¶11. Keith testified that upon learning of the mistake in the deed, he went to the Jackson County land-records office where he was informed that the deed prepared by Andy conveyed all 8.9 acres to the Rogerses, rather than the 2.3 acres listed for sale. Keith immediately contacted Alfonso Realty and Andy about the error. Keith testified that Alfonso Realty confirmed to him that "when they closed that deed, they closed it on the whole 8.9 [acres]." Keith explained to Alfonso Realty that "there is a chunk of land in the middle that [he] didn't own," referring to the 1.23 acres he deeded to the Storms prior to the real-estate transaction at issue. Keith testified that Alfonso Realty then told him, "[Andy] had done a less and

4

except . . . so they just kind of subtracted the 1.23 acres of the Storms out of it and now closed it out with the two unconnected parcels."

¶12.    Alfonso Realty and Andy assured Keith that they would correct the deed.  However, the record reflects that once the Rogerses learned that they owned 8.9 acres, rather than 2.3, they obtained a second mortgage encumbering the entire 8.9 acres.

¶13.    Andy testified that after Keith alerted him to the incorrect deed, he prepared corrective instruments for Keith to sign.  Andy testified that he also had several conversations with Cheryl, as well as the Rogerses, and "none of them would come sign these corrective instruments."  However, Keith disputed that Andy ever contacted him to sign corrective instruments.  Keith explained that the Rogers family had already encumbered the property with a mortgage upon closing and a second mortgage upon learning that the warranty deed conveyed the entire 8.9 acres, rather than the 2.3 acres intended to be sold.  The record also shows that Keith stated that he could not force the Rogers family to convey the property back to him, particularly since the property was encumbered.  The record reflects that at trial, the following exchange occurred during Andy's cross-examination of Keith:

> Q.    You brought me the survey months later after all of this took place and you found out that, I guess, there was a clerical mistake with the deed that was prepared.  And, actually, none of my secretaries were there that day.  I was there myself.  And we met.  You brought the surveys to me, we took a look at them, and you asked me to prepare some corrective instruments that we needed to straighten it out.  And you pointed out that middle acreage, you pointed out the back five acres, and you pointed out the front acres.  After preparing those, I gave you a call to come sign the corrective instruments so we could get something on file down at the courthouse that would put everybody and their grandmother on notice that there was an issue, at least.  Why didn't you come?

5

A.      You never approached me about it.  In fact, the conversation we had was that you said the Rogers[es] had backed out of signing it.  I assure everybody in this courtroom, I would have climbed over brick walls and ran through fire to get down there to sign what you're talking about.

¶14.   On June 6, 2008, Keith filed his complaint to confirm and quiet title, set aside the deed, or, in the alternative, reform the deed, and for damages against the Defendants in the Jackson County Chancery Court.[2]  In his complaint, Keith alleged that Alfonso Realty breached its contract with Keith and Cheryl by failing to protect their interests and causing them to execute the warranty deed selling all of their property, rather than just a portion, to the Rogerses.  Keith also alleged that Andy was negligent in preparing the deed.  Keith requested damages for emotional distress, depreciation in the value of his real estate, and inconvenience, as well as attorney's fees.

¶15.   On November 7, 2008, Keith requested that the chancery clerk enter an entry of default against the Rogerses as a result of their failure to appear, plead, or otherwise defend against Keith's complaint.  The record reflects that the chancery court entered the entry of

---

[2] The record reflects that Cheryl failed to file an answer or defend against Keith's suit. During Keith's deposition in 2010, Keith stated it was "possible" that a default judgment was entered against Cheryl for her failure to answer the complaint. The deposition transcript also reflects that counsel for Alfonso Realty asked Keith's counsel whether they "[had] taken an actual judgment or just default" against Cheryl, and Keith's counsel responded "judgment," but explained that he did not know the amount.  At trial, when asked why Cheryl was named as a defendant in the lawsuit, Keith responded, "I'm not real sure."  He later explained:

> At that time, we were fighting a divorce. And as a community property split, she was given some property in Harrison County, and then I was given her signed-over rights to whatever I could ever recover out of this Jim Rams[e]y property, and I don't really know.

6

default on November 7, 2008.

¶16. On December 19, 2008, the chancery court entered an order transferring the case to circuit court, explaining that after reviewing the pleadings, "the circuit court is the appropriate court to hear this matter." The chancellor stated that because Keith alleged breach of contract against Alfonso Realty and sought both actual and punitive damages, "[t]his matter does not fall within the chancery court's jurisdiction over 'all matters in equity.'"

¶17. On April 20, 2010, Alfonso Realty filed its motion to dismiss for failure to prosecute or, in the alternative, for summary judgment in the circuit court. Alfonso Realty claimed that Keith "ha[d] taken no steps to prosecute his claim over the twenty-two months this case ha[d] been pending." Alfonso Realty explained that Keith's claim against it was for damages only. Alfonso Realty also argued as follows:

> [A r]eview of the Listing Agreement and Contract for the Purchase of Sale of Real Estate evidenced no duty or contractual requirement that Alfonso [Realty] take responsibility for the drafting or review of the deed in this transaction. Even absent the Declaration of Acceptance[,] which specifically releases Alfonso [Realty], there would exist no material fact in dispute supporting [Keith's] claim of breach of contract.

¶18. On October 27, 2010, the circuit court granted Alfonso Realty's motion for summary judgment. The circuit court then transferred the remaining claims back to the chancery court, explaining: "Now that summary judgment has been granted with regard to the breach of contract and damages, [the] [c]ircuit [c]ourt does not have jurisdiction to hear the remaining equity claims."

¶19. On November 30, 2011, the chancellor, on her own motion, entered an order

7

dismissing the case without prejudice after finding that the case had "been on the docket for twelve (12) terms or longer without any action being taken thereon." In response, Keith filed a motion to reinstate the case, which the chancellor granted on January 9, 2012.

¶20. The record reflects that over the next four years, this matter was set for trial and continued approximately six times. The chancellor held a bench trial on September 8, 2016. At trial, Keith presented three witnesses: himself, Andy, and Joyce Wilkerson, who had prepared an abstract of Keith and Cheryl's property. At the conclusion of the trial, Keith made an ore tenus motion for a default judgment against the Rogerses.[3]

¶21. The chancellor denied Keith's claims for relief on November 17, 2016, and rendered a judgment in favor of the Defendants. The chancellor found that Keith failed to deraign title, file a lis pendens, and join all necessary parties as required by law, thus leaving the chancellor without jurisdiction to reform title to the property or enter a default judgment against the Rogerses. The chancellor thus denied Keith's request for a default judgment. The chancellor also held that Keith presented insufficient evidence to sustain his burden of proving that Andy was negligent in preparing the warranty deed.

¶22. Keith now appeals, arguing that the chancellor erred in finding that he failed to prove that Andy committed legal malpractice.

## STANDARD OF REVIEW

¶23. This Court employs a limited standard when reviewing appeals from chancery court.

---

[3] The record reflects that the trial was held on September 8, 2016, and the clerk previously entered an entry of default against the Rogerses nearly eight years earlier, on November 7, 2008.

8

*Corp. Mgmt. Inc. v. Greene Cty.*, 23 So. 3d 454, 459 (¶11) (Miss. 2009). We review a chancellor's decision for an abuse of discretion, and we "will not disturb the factual findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous[,] or applied an erroneous legal standard." *Id*. We review questions of law de novo. *Id*.

**DISCUSSION**

¶24. Keith argues that the chancellor erred in finding that he failed to present sufficient evidence to meet his burden of proving that Andy committed legal malpractice in preparing the warranty deed conveying Keith's property.[4] As stated, we review a chancellor's findings of fact for an abuse of discretion. *Id*.

¶25. In her November 17, 2016 final judgment, the chancellor addressed Keith's legal-malpractice claim and found as follows:

> [Keith] alleged that [Andy] prepared a deed which included an erroneous

---

[4] In his reply brief, Keith claims that Andy's brief fails to comply with Mississippi Rule of Appellate Procedure 28(f), which provides: "All briefs shall be keyed by reference to page numbers (1) to the record excerpts filed pursuant to Rule 30 of these Rules, and (2) to the record itself." Keith claims that Andy failed to cite to the record or record excerpts in his appellate brief. However, the supreme court has held as follows:

> The rules and regulations specifying the requirements for briefs are liberally construed, and a technical violation thereof will not prevent a consideration of the appeal. However, the rules cannot be ignored or entirely disregarded, and, although a good faith attempt and substantial compliance with the rules relative to briefing is sufficient, such a good faith attempt and substantial compliance is necessary to insure consideration of the appeal[.]

*S. Farm Bureau Cas. Ins. Co. v. Nat'l Bureau of Cas. Underwriters*, 254 Miss. 445, 452, 181 So. 2d 154, 156 (1965). We find that Andy's brief is sufficient to insure consideration of his argument on appeal.

description of real estate. [Keith] alleged that this act constituted negligence, and he requested damages. The elements of a negligence action are well[] settled in Mississippi. *Patterson v. Liberty Associates, L.P.*, 910 So. 2d 1014, 1019 (Miss. 2004). In a negligence action, the plaintiff must prove by a preponderance of the evidence that there was a duty, breach, causation, and damages. *Thrash v. Deutsch, Kerigan & Stiles, LLP*, 183 So. 3d 838 (Miss. 2016) (citing *Entrican v. Ming*, 962 So. 2d 28, 32 (Miss. 2007)). In matters tried in chancery court, the "chancellor has the sole responsibility to determine the credibility of witnesses and evidence." *Hall v. Hall*, 134 So. 3d 822, 826 (Miss. Ct. App. 2014) [(]citing *Chamblee v. Chamblee*, 637 So. 2d 850, 860 (Miss. 1994)[)]. In this matter, the [c]ourt, having considered the testimony of the parties, the evidence presented, and the applicable law, finds that there was insufficient evidence presented by [Keith] to sustain [his] burden of proof. As such, the [c]ourt finds the negligence claim is DENIED.

¶26. The Mississippi Supreme Court has distinguished between two types of legal-malpractice claims: "[(1) those] based on negligence (sometimes called a breach of the standard of care) and [(2)] those based on breach of fiduciary duty (sometimes called a breach of the standard of conduct)." *Crist v. Loyacono*, 65 So. 3d 837, 842 (¶15) (Miss. 2011). On appeal, Keith alleges that Andy was both negligent and breached his fiduciary duty. Since the analysis is different for each claim, we will address them separately. In so doing, we find, as set forth in this opinion, that Keith is barred from raising his claim of legal malpractice based on an allegation of breach of fiduciary duty. Therefore, only Keith's negligence-based legal-malpractice claim is properly before us in this appeal.

## I. Fiduciary Duty

¶27. To prove legal malpractice based on an allegation of breach of fiduciary duty, the plaintiff must establish the following: "(1) the existence of an attorney-client relationship; (2) the acts constituting a violation of the attorney's fiduciary duty; (3) that the breach proximately caused the injury; and (4) the fact and extent of the injury." *Id*. at 842-43 (¶15).

10

¶28.    The supreme court has held that "[i]f a complaint is intended to allege a breach of fiduciary duty, it would be necessary to state with particularity the facts which purportedly created the duty that was breached, so that the court could determine as a matter of law whether there was such a duty." *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1216 (Miss. 1996).  The supreme court clarified that "merely mak[ing] the conclusory statement that a fiduciary duty was violated" in the complaint "is not sufficient." *Id.*

¶29.    Keith's complaint asserts a claim of legal malpractice based only on an allegation of negligence, and not a breach of fiduciary duty.  In his complaint, Keith alleged that "[t]he actions of [Andy] in preparing the deed which included an erroneous description of real estate constitutes negligence.  As a result of said negligence, [Keith] has been damaged and . . . is entitled to receive damages he has suffered."  A review of the chancellor's November 17, 2016 final judgment also reflects that Keith's claim of legal malpractice based on negligence was the only malpractice claim before her.  Other than on appeal, the only time Keith made an argument about Andy's alleged breach of fiduciary duty was during closing arguments at trial.  During closing arguments, Keith's counsel asserted that as the closing attorney, Andy was acting in the capacity of a dual agent for Keith and the Rogerses.  In his proposed findings of fact, Andy also admitted that he had an attorney-client relationship with Keith and the Rogerses.  Keith's counsel submitted that as a result, Andy owed a fiduciary duty to both Keith and the Rogerses.

¶30.    After reviewing the record, we find that Keith failed to "state with particularity" the facts creating the duty that Andy allegedly breached.  Furthermore, the supreme court has

11

held that an appellate court "will not consider issues raised for the first time on appeal." *Anderson v. LaVere*, 136 So. 3d 404, 410 (¶6) (Miss. 2014). Since Keith failed to allege a breach of fiduciary duty in his complaint or raise the argument in the chancery court, Keith is barred from raising this argument for the first time on appeal.

## II. Negligence

¶31. To prove legal malpractice based on an allegation of negligence, or breach of the standard of care, the plaintiff must establish the following by a preponderance of the evidence: "(1) an attorney-client relationship; (2) the attorney's negligence in handling the client's affairs; and (3) proximate cause of the injury." *Great Am. E & S Ins. Co. v. Quintairos, Prieto, Wood & Boyer, P.A.*, 100 So. 3d 420, 424 (¶17) (Miss. 2012) (citing *Pierce v. Cook*, 992 So. 2d 612, 617 (¶11) (Miss. 2008)). We will discuss these factors in length below.

### a. Attorney-Client Relationship

¶32. Regarding the first factor, the existence of an attorney-client relationship, the record reflects that in his appellate brief and his proposed findings of fact and conclusions of law submitted to the chancellor, Andy admitted to the existence of an attorney-client relationship: "Defendant Andy Alfonso had an attorney-client relationship with the parties to the transaction."

¶33. We also recognize that in *Great American*, 100 So. 3d at 424-25 (¶21) (citing *Century 21 Deep South Properties Ltd. v. Corson*, 612 So. 2d 359, 374 (Miss. 1992)), the supreme court provided that it has "abolished the absolute requirement of an attorney-client

relationship in title-work cases," explaining that an attorney's liability "may be extended to foreseeable third parties who detrimentally rely on the attorney's negligent conduct." The supreme court in *Great American* also "recognized that lawyers who perform title work are fully aware that their work will be relied upon by subsequent purchasers and lienors of property." *Id*. at 425 (¶22). The supreme court explained that "[i]t is common knowledge that the client of an attorney performing a subsequent title update relies on the prior title opinion and whether that opinion revealed any deficiencies." *Id*. Accordingly, "an attorney engaged to perform title work is expected by the client to protect not only the client, but those who later rely on the attorney's opinion." *Id*.

¶34. As stated, Andy admitted, and the record reflects, the existence of an attorney-client relationship between Andy and Keith. We next turn to the second factor necessary for proving legal malpractice based on an allegation of negligence: whether Keith established sufficient evidence at trial to show that Andy was negligent in preparing the deed herein.

### b. Attorney's Negligence

¶35. In *Pierce*, the supreme court addressed the factor requiring a showing of the attorney's negligence and explained that "a lawyer owes his client the duty to exercise the knowledge, skill, and ability ordinarily possessed and exercised by the members of the legal profession similarly situated. Failure to do so constitutes negligent conduct on the part of the lawyer." *Pierce*, 992 So. 2d at 617 (¶11).

¶36. The supreme court has held that "an attorney must act with the greatest circumspection in the representation of multiple clients where the[re] exists a possibility that

13

their interest may conflict or be at cross purposes." *Lane v. Oustalet*, 873 So. 2d 92, 96 (¶20) (Miss. 2004).[5]  When a real-estate attorney serves as a dual agent and "represent[s] both parties to a transaction, . . . he must proceed with a heightened sense of duty and conduct to assure that he serves both masters' interests fully."  *Id*. at 97 (¶20).  Furthermore, "[a]n attorney performing title work will be liable to reasonably foreseeable persons who, for a proper business purpose, detrimentally rely on the attorney's title work, suffering loss proximately caused by his negligence."  *Corson*, 612 So. 2d at 374.

¶37.  Regarding Keith's burden of proof herein, we recognize that the supreme court has established that generally, "expert testimony is necessary to establish the breach of a duty of care in a claim of legal malpractice."  *Byrd v. Bowie*, 933 So. 2d 899, 904 (¶15) (Miss. 2006). However, in *Pierce*, 992 So. 2d at 617 (¶15), the supreme court "recognized that experts are not required in all legal-malpractice cases."  The *Pierce* court explained that

> attorneys involved in malpractice actions must always remember there is a pragmatic difference between the trial of other professional malpractice cases and a legal[-]malpractice case.  In the former class, the lawyers and judges are laymen.  In professional[-]malpractice cases, excepting extreme cases, we rely upon experts for guidance.  The attorney who finds himself the defendant in a legal[-]malpractice case, however, has a judge and the trial attorneys who are

---

[5] In *Lane*, the supreme court cited to *Hartford Accident & Indemnity Company v. Foster*, 528 So. 2d 255, 285 (Miss. 1988), and stated as follows:

> In an action involving a legal[-]malpractice claim where the attorney had represented both the insurer and the insured in a personal injury action arising from an automobile accident, this Court held that legal malpractice may be a violation of the standard of care of exercising the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated, or the breach of a fiduciary duty.

*Lane*, 873 So. 2d at 98 (¶27).

already experts.

*Id*. at 617-18 (¶16) (quoting *Hickox ex rel. Hickox v. Holleman*, 502 So. 2d 626, 636 (Miss. 1987) (superseded by rule on other grounds)).[6] Keith did not present expert testimony at trial, nor did the facts of this case require him to.

¶38. Keith submits that at trial, he provided evidence showing that prior to the loan closing and preparation of the warranty deed, Andy negligently failed to communicate with Keith regarding the property Keith intended to convey. Keith also asserts that Andy was negligent in failing to review any surveys of the property prior to drafting the deed, and as a result, Andy drafted a warranty deed with an incorrect legal description.

¶39. Keith also argues that as a layperson, he lacked the knowledge at the time of the closing to understand the legal description provided by Andy and that he relied on Andy, as his attorney, to provide the correct legal description. In support of his argument, Keith provides that he later learned, and the record shows, that the legal description provided by Andy in the warranty deed for 6331 Jim Ramsey Road also included both the five acres located at 6327 Jim Ramsey Road and the middle parcel (6325 Jim Ramsey Road) that Keith did not even own at the time of the closing because Keith had already deeded this 1.23 acres of land to the Storms.

¶40. Andy argues, however, that at the closing, he presented the warranty deed to Keith and

---

[6] In *Hickox*, the supreme court found the failure of an attorney to file suit prior to the expiration of the statute of limitations was negligence as a matter of the law, and held that the client bringing the negligence suit was entitled to a directed verdict on liability without presenting expert testimony on the breach of the standard of care. *Hickox*, 502 So. 2d at 634.

15

the Rogerses, along with a map displaying a picture of the property to be conveyed, less the parcel previously conveyed to the Storms, and the legal description of the property to be conveyed. Andy also claims that at the closing, he discussed the property's boundary lines and acreage involved, and none of the parties nor Shirley objected to the property being conveyed at the closing. Andy maintains that his actions in preparing the deed and presenting the deed to Keith to execute failed to constitute negligence.

¶41. However, as previously acknowledged, Andy admitted that he possessed an attorney-client relationship with Keith. Our review of the record reflects that Andy was hired to prepare the deed and legal property description for the parcel of land to be sold at 6331 Jim Ramsey Road.[7] During Keith's cross-examination at trial, Keith testified that he had no personal communication with Andy prior to the closing in July 2008.[8] Andy also admitted

---

[7] The record reflects that the purchase agreement for the house and 2.3 acres shows that Keith was charged for "deed preparation." However, the United States Department of Housing and Urban Development Settlement Statement in the record reflects that although Keith did pay Andy $350 in attorney's fees, Keith did not pay for a title search.

[8] The transcript reflects the following testimony by Keith:

Q. Okay. I'm asking you about [Andy's] office. Before you signed that deed transferring the property to—the entire 8.9 acres to the Rogers[es], did you ever have any type of communication with [Andy] or somebody from his office, not from Alfonso Realty, about what property you wanted to convey?

A. Did you say before I signed the deed?

Q. Right.

A. No. Before I went in and sat and did the closing?

Q. Correct.

16

at trial that he never communicated with Keith prior to preparing the warranty deed and prior to the July 2008 closing.

¶42. The record shows that the contract for sale was admitted into evidence at trial. The contract for sale identified the house located at 6331 Jim Ramsey Road, as well as the 2.3 acres of land, as the property being sold by Keith and Cheryl. However, the legal description of the property provided by Andy in the warranty deed also included the properties located at both 6325 Jim Ramsey Road and 6327 Jim Ramsey Road. The warranty deed at issue herein states, in pertinent part, as follows:

> Keith A. O'Brien and Cheryl R. O'Brien do hereby sell, convey and warrant unto Michael Rogers and Mary Ann Rogers, as joint tenants with full right of survivorship and not as tenants in common, the land and property which is

---

A.   Did I have any conversation with anybody in [Andy's] office?

Q.   Correct.

A.   No.

Q.   So, you were, from my understanding, relying on [Shirley] to convey to [Andy] what property you wanted to sell?

A.   Absolutely.

Q.   Okay.

A.   I'd never—I didn't really know who they were at that point.

Q.   At that point, when you were presented with a [w]arranty [d]eed, did anybody explain to you . . . what you were conveying?

A.   No. Again, I sat in there with Andy and his legal people or paralegal and Shirley.

17

situated in the County of Jackson, State of Mississippi, described as follows, to wit:

See Exhibit "A"

Said parcel of property carries the County Parcel Number 02308100.017.

Said parcel of property is the same recorded in Deed Book 1132, Page 869 Land Deed Records of Jackson County, Mississippi.

¶43. The amount of acreage sold does not appear on the face of the warranty deed. However, the warranty deed references Exhibit A, which provides the legal description of the land. The legal description in Exhibit A reads, in pertinent part, as follows: "Said parcel contains **8.9 acres**, **more or less** and intending to be that same land conveyed to [the O'Briens] by deed . . . and recorded in . . . the Land Deed Records of Jackson County, Mississippi." (Emphasis added). As stated, this legal description of the property prepared by Andy included two other addresses and related parcels beyond the 2.3 acres located at 6331 Jim Ramsey Road being sold by Keith and Cheryl at the closing.

¶44. As previously acknowledged, Keith and Cheryl purchased the entire 8.9 acres in 1998 and subsequently had the property surveyed and divided into three parcels. Keith then established street addresses for each of the parcels. Our review of the record reflects that Andy failed to conduct a proper title search of Keith and Cheryl's property prior to preparing the warranty deed. Andy admitted at trial that he did perform a title search, but that he failed to discover that Keith had already deeded the 1.23-acre middle parcel located at 6325 Jim Ramsey Road to the Storms prior to entering the contract for sale with the Rogerses. Andy also testified that he should have included language in the deed that excepted this 1.23-acre

18

parcel out of the legal description set forth in the deed, but that he failed to do so:

> Q. When you did your title search, did it not pop up the fact that [Keith], prior to the loan closing, didn't actually own the entire 8.9 acres?
>
> A. I'd have to go back, but there should have probably been a less and—well, not probably. There should have been a less and except for that one point something acres, the Storm property in the middle. That should have appeared on the deed.
>
> Q. But you didn't catch that and put that on the deed?
>
> A. I'm not sure if I did or didn't.
>
> Q. You've . . . still got the [w]arranty [d]eed?
>
> A. I do. Yea[h]. It's not in the deed. The less and except is not there.

¶45. After our review of the record, we find that Andy was negligent in drafting the warranty deed, which contained an erroneous legal description of the property to be sold.

### c.    Proximate Cause

¶46. Finally, Keith must show that Andy's negligence in preparing the warranty deed proximately caused the injuries for which Keith seeks damages. The supreme court has explained that "a plaintiff in a negligence-based malpractice action must establish proximate cause by the so-called trial-within-a-trial test. That is to say, the client must show that, but for his attorney's negligence, he would have been successful in the prosecution or defense of the underlying action." *Crist*, 65 So. 3d at 842 (¶14) (emphasis and internal quotation marks omitted); *see also Thompson v. Erving's Hatcheries Inc.*, 186 So. 2d 756, 759 (Miss. 1966) (In legal-malpractice actions, "damages claimed are usually the value of the claim lost or judgment suffered as an alleged result of the attorney's negligence.").

19

¶47. In his appellate brief, Keith admits that "[g]iven the nature of the underlying transaction, [he] cannot show that he would have won the case within the case." However, Keith claims that if Andy had correctly described the property in the warranty deed, Keith would still have roughly five acres of land on which to live.

¶48. In support of his claim for damages, Keith testified that he had an appraisal performed of the five acres that he intended to keep. The chancellor admitted a copy of the appraisal into evidence. Keith testified that the appraised value of the five acres was $35,000. Keith also testified that regarding damages, he "really wanted [his] property back," but he would also "take either" a corrected deed or the amount of money the property is worth. Keith also testified as to the attorney's fees that he incurred in attempting to resolve this matter.[9]

¶49. The record reflects that the Rogerses obtained a mortgage on the property that attached at the time of the closing. The record also reflects that in 2006, once the Rogerses learned that they owned 8.9 acres, rather than 2.3, they obtained a second mortgage encumbering the entire 8.9 acres.

¶50. Andy, however, asserts that even if the chancellor had found that Andy's actions constituted legal malpractice, Keith still could not recover title to the land due to his failure to deraign title, file a lis pendens, and join all necessary parties. However, as stated, return of the property to Keith is not a viable remedy since the Rogerses encumbered the property upon closing and then obtained a second mortgage in 2006. In her final judgment, the chancellor held that since Keith failed to deraign title, failed to file a lis pendens, and failed

_____

[9] Keith testified that he paid his first attorney $4,200 for his services in resolving the present matter. Keith further testified that he has "a lot of time and money tied up into this."

20

to join all necessary parties, the chancellor lacked jurisdiction to reform title to the property or enter a default judgment against the Rogerses. However, Keith failed to appeal the chancellor's denial of Keith's request to confirm and quiet title. The issue on appeal is whether Keith met his burden of proving by a preponderance of the evidence that Andy committed legal malpractice by negligently drafting a warranty deed containing an incorrect legal description of the property to be sold.

¶51. Upon our review, we find that the record contains substantial credible evidence showing that Andy committed legal malpractice based on negligence. The record contains substantial credible evidence, including Andy's admission, showing that an attorney-client relationship existed between Andy and Keith; that Andy was negligent in preparing the deed containing an erroneous legal description of the property to be sold; and that Andy's negligence proximately caused Keith to incur damages. As discussed, Andy acknowledged that since Keith did not own the 1.23-acre middle parcel (6325 Jim Ramsey Road) at the time of the closing, Andy should have included "less and except" language in the deed. However, Andy admitted that he failed to include this language in the deed. While drafting the warranty deed and conducting a proper title search, Andy also should have discovered that the five-acre back parcel (6327 Jim Ramsey Road) was not connected to the property intended to be sold (6331 Jim Ramsey Road) as a result of the prior conveyance of the 1.23-acre middle parcel. However, Andy failed to make this discovery. The chancellor's finding that Keith failed to meet his burden of proof is not supported by the evidence in the record, and we therefore reverse the chancellor's judgment and remand this case to the chancellor

21

for a determination of damages. *See Gibson v. Williams, Williams & Montgomery P.A.*, 186 So. 3d 836, 850-51 (¶¶45-49) (Miss. 2016) (reversing and remanding the chancellor's grant of summary judgment after finding the appellant established sufficient evidence to raise a genuine issue of material fact as to the issue of damages); *Corson*, 612 So. 2d at 369 (reversing and remanding the chancellor's judgment regarding the issue of damages).

¶52.   **REVERSED AND REMANDED**.

**LEE, C.J., IRVING, P.J., GREENLEE AND WESTBROOKS, JJ., CONCUR. WILSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., AND TINDELL, J.; BARNES, J., JOINS IN PART. FAIR, J., NOT PARTICIPATING.**

**WILSON, J., DISSENTING:**

¶53.   I respectfully dissent. Based on the evidence presented at trial, the chancellor could have found that Keith O'Brien's failure to read the deed he signed was the sole proximate cause of his alleged damages. Therefore, the chancellor's finding that O'Brien failed to "sustain [his] burden of proof" must be affirmed.

¶54.   Following a bench trial, the chancellor entered judgment in favor of Andy Alfonso on O'Brien's claim for legal malpractice, ruling as follows:

> [O'Brien] alleged that [Alfonso] prepared a deed which included an erroneous description of real estate. [O'Brien] alleged that this act constituted negligence, and he requested damages. The elements of a negligence action are well-settled in Mississippi. In a negligence action, the plaintiff must prove by a preponderance of the evidence that there was a duty, breach, causation, and damages. In matters tried in chancery court, the chancellor has the sole responsibility to determine the credibility of witnesses and evidence. In this matter, the Court, having considered the testimony of the parties, the evidence presented, and the applicable law, finds that there was insufficient evidence presented by [O'Brien] to sustain [his] burden of proof. As such, the Court finds the negligence claim is DENIED.

(Citations, quotation marks omitted).

¶55. The chancellor did not specify which element(s) of O'Brien's negligence claim that he failed to prove. But no party requested specific findings of fact, and this was not a complex case, so the chancellor's generalized finding of fact was sufficient. *See* M.R.C.P. 52; *Carpenter v. Berry*, 55 So. 3d 1158, 1161-62 (¶¶13-15) (Miss. 2011). "Generally, when there are no specific findings of fact, this Court will assume that the trial court made determinations of fact sufficient to support its judgment." *Century 21 Deep S. Props. Ltd. v. Corson*, 612 So. 2d 359, 367 (Miss. 1992). "Where there are no specific findings of fact provided by the chancellor, this Court must look to the evidence and see what state of facts will justify the decree." *Id.*; *accord Par Indus. Inc. v. Target Container Co.*, 708 So. 2d 44, 47 (¶4) (Miss. 1998).

¶56. Alfonso testified that no one ever told him that the deed should convey less than the entire tract of land previously owned by O'Brien. Alfonso testified that he obtained the legal description of the property from the land records, i.e., from the prior deed conveying the property to O'Brien. In fact, Alfonso testified that he remained unsure what part of the property O'Brien intended to convey.[10] However, the evidence did tend to show (1) that O'Brien intended to convey only a 2.3-acre lot, not the entire 8.9-acre tract described in the deed that Alfonso prepared; and (2) that a proper title search and examination would have identified this issue because a previously recorded deed conveyed 1.23 of the 8.9 acres from

---

[10] O'Brien testified that he intended to convey only a 2.3-acre lot, not the entire tract, but none of the other parties to the deed—O'Brien's ex-wife and Michael and Mary Ann Rogers—or the real estate agent, Willard, testified at trial.

O'Brien to his daughter and son-in-law. Alfonso claimed that he performed a title search, but the record does not include a title report or any other contemporaneous records or notes of Alfonso's, and Alfonso could not explain why he prepared a deed that failed to account for the 1.23 acres that O'Brien had already conveyed. A proper title search would have identified this discrepancy and, at a minimum, prompted further inquiry by Alfonso. Based on this evidence, O'Brien proved negligence. In addition, Alfonso admits an attorney-client relationship with O'Brien.

¶57. Nonetheless, I would affirm the judgment of the chancery court because the record contains facts from which the chancellor could have found that Alfonso's negligence was *not* a proximate cause of any damages. Indeed, this was the issue that Alfonso emphasized in his closing statement in the chancery court. O'Brien and his ex-wife signed a one-page warranty deed that clearly stated that the property being conveyed was described in an attached "Exhibit 'A.'" That one-page exhibit contained only a brief legal description of the land conveyed, which concluded as follows: "Said parcel contains 8.9 acres, more or less and intending to be at same land conveyed to Grantors by deed dated September 10, 1993 and recorded in . . . the Land Deed Records of Jackson County, Mississippi." If O'Brien had read the warranty deed that he signed, he would have seen that it did not reflect his alleged intent. Therefore, the chancellor could have found that O'Brien's failure to read the deed was the sole proximate cause of any damages.

¶58. Our Supreme Court has made the same basic point in the context of claims against insurance agents alleging negligent failure to procure coverage. The Court has held that an

24

agent has a duty to exercise reasonable diligence and skill to obtain coverage requested by the insured. *See Mladineo v. Schmidt*, 52 So. 3d 1154, 1164 (¶35) (Miss. 2010); *Robichaux v. Nationwide Mut. Fire Ins.*, 81 So. 3d 1030, 1040 (¶30) (Miss. 2011). However, the insured also has a "duty to read [his] policy." *Mladineo*, 52 So. 3d at 1164 (¶38). If the terms of the policy presented to the insured "plainly did not cover the things that the [insured] assumed [the policy] would cover," then the insured's own failure to read his policy—not the agent's breach of duty—is "the proximate cause of [the insured's] damage." *Id.* (holding that a policy clearly excluded coverage for water damage; therefore, the insureds' failure to read their policy—not the agent's failure to procure the coverage—"was the proximate cause of their damage"); *accord Bell v. Certain Underwriters at Lloyd's London*, 200 So. 3d 447, 452-53 (¶19) (Miss. Ct. App. 2016) (finding that a policy clearly did not insure a barn on the property; therefore, the insured's failure to read her policy—not the agent's failure to procure the coverage—was the proximate cause of her damages).

¶59.    On the evidence in this case, the chancellor could have reached the same conclusion regarding O'Brien's failure to read his warranty deed. Had O'Brien read his deed, he would have seen that it purported to convey 8.9 acres, the entire tract he originally purchased years earlier. Had O'Brien read the deed, the legal description could have been corrected before he conveyed the property to Michael and Mary Ann Rogers, and he would not have suffered any damages. Because the legal description attached to the deed clearly purports to convey 8.9 acres, the chancellor could have found that O'Brien's own failure to read the deed—not Alfonso's negligence—was the proximate cause of any damages.

25

¶60.    Courts in other states have applied this same basic principle in legal malpractice cases. For example, in *Berman v. Rubin*, 227 S.E.2d 802 (Ga. Ct. App. 1976), an attorney drafted a property settlement agreement for a client in a divorce case, and the client later alleged that the agreement failed to reflect the parties' intent regarding alimony and child support, which resulted in the client being ordered to pay more than the parties had intended. *Id.* at 804. The Georgia Court of Appeals recognized that although an attorney "is not an insurer of the documents he drafts, the attorney may breach his duty towards his client when, after undertaking to accomplish a specific result, . . . he then fails . . . to effectuate the intent of the parties." *Id.* at 805 (footnote omitted). The court then held that although the issue of negligence presented a jury question, the attorney was entitled to summary judgment because "[t]he record affirmatively show[ed] that [his] actions were not the cause of the alleged injury to [his client]." *Id.* at 806. The court reasoned that the property settlement agreement was "not ambiguous, nor [was] it technical or laced with 'legal jargon.'" *Id.* The client initialed and signed each page and reviewed changes to a prior draft. *Id.* The court emphasized that "[t]here are few rules of law more fundamental than that which requires a party to read what he signs and to be bound thereby," and that "[t]his rule has particular force when the party is well educated and laboring under no disabilities." *Id.* Because the alleged error would have been apparent to the client had he read the agreement, the client could not "show that [his attorney's] actions, and not his own, were the cause of his alleged injury." *Id.*; *see also id.* at 807 (holding that the client's "ability to read and comprehend, together with his failure to do so, constitute[d] [an] intervening cause," which broke the "chain of causation leading

26

from [the attorney] to [the client]").

¶61. The *Berman* court emphasized that its holding was not unlimited and did *not* immunize attorneys from liability for "negligent draftsmanship":

> [W]here the document requires substantive or procedural knowledge, is ambiguous, or is of uncertain application, the attorney may well be liable for negligence, notwithstanding the fact that his client read what was drafted. This holding is simply that when the document's meaning is plain, obvious, and requires no legal explanation, and the client is well educated, laboring under no disability, and has had the opportunity to read what he signed, no action for professional malpractice based on counsel's alleged misrepresentation of the document will lie.

*Id.* at 806. Thus, while *Berman* held, as a matter of law, that the attorney's negligence was not the proximate cause *in that case*, in many other cases the issue will be one for the fact-finder to decide at trial. *See Paul v. Smith, Gambrell & Russell*, 642 S.E.2d 217, 223 (Ga. Ct. App. 2007) (distinguishing *Berman* and holding that a "jury must decide" issues of causation related to the clients' "ability to read and comprehend the documents").[11]

¶62. For similar reasons, the chancellor in this case could have found that O'Brien's own failure to read the warranty deed was the sole proximate cause of any damages. O'Brien was not under any disability, and nothing prevented him from reading the deed. The deed plainly

_____

[11] *Accord Rice v. Poppe*, 881 N.W.2d 162, 170-72 (Neb. 2016) ("A line of cases decided by the Georgia Court of Appeals," starting with *Berman*, "illustrates when a client's failure to read or understand a document is the proximate cause of . . . her injury. . . . As these cases show, whether a client's failure to read or understand the disputed document is a superseding cause depends on the facts."); *Sutton v. Mytich*, 555 N.E.2d 93, 98 (Ill. App. Ct. 1990) (discussing *Berman* and subsequent cases and holding that "[w]hether the failure of a client to read a particular document necessarily defeats a malpractice action is dependent upon the particular circumstances"); *see also Simon v. Nadler, Nadler & Burdman Co.*, 142 F. App'x 894, 895-96 (6th Cir. 2005) ("[T]he proximate cause of Simon's damages was her own failure to read the antenuptial agreement before signing it . . . . [I]f Simon had read the agreement before signing, she would have discovered the offending provisions . . . .").

27

purported to convey the entire 8.9-acre tract. If O'Brien had read the deed, he would have seen that and could have had it corrected before he suffered any damage.

¶63. As the Georgia Court of Appeals held in *Berman*, *supra*, a client's failure to read and understand a document will not always save the lawyer from liability for negligent drafting. If the legal import of an agreement's terms is not clear to a layperson, then the client's failure to read and understand may not be the proximate cause of his own damage. In some cases, this will be an issue for the trier of fact. *See Paul*, 642 S.E.2d at 223. On the facts of this case, the chancellor, as the trier of fact, could have found that O'Brien's failure to read was the proximate cause of his own damage. Therefore, the chancellor did not manifestly or clearly err in finding that O'Brien failed to meet his burden of proof, and this Court must affirm the chancellor's judgment. I respectfully dissent.

**GRIFFIS, P.J., AND TINDELL, J., JOIN THIS OPINION. BARNES, J., JOINS THIS OPINION IN PART.**