FACTS AND PROCEDURAL HISTORY ¶ 1. On September 8, 2000, the Scott family was involved in a two-car accident in Marshall County, Mississippi. The accident involved a vehicle owned and operated by William Scott. William; Pauletta Scott, William's wife; Brenda Greenwood, William's daughter (collectively the Scotts); and Greenwood's minor child occupied William's vehicle. The other vehicle was owned by John Spencer and occupied by Christopher Conway and Tabitha Gammons. Whether Conway or Gammons was the driver of Spencer's vehicle remains unclear. The Scotts' medical bills for injuries related to the accident exceeded $230,000. Pauletta and Brenda made claims against William Scott. The Scotts brought a claim against Direct Insurance Company, the insurer of the Spencer vehicle, under the assumption that Conway was the driver of the vehicle. The Scotts also made a claim against State Farm Insurance Company, the insurer of the Scott vehicle, under their under-insured motorist coverage. The Scotts' claims were settled through the liability policies of the vehicles. In exchange for the settlements, the Scotts executed releases with Direct and State Farm releasing them from any liability associated with the accident. The Direct release was dated December 17, 2002, and the State Farm release was dated March 31, 2003. Gammons filed a claim with her personal insurer, which was also State Farm.
 ¶ 2. On September 5, 2003, the Scotts filed a lawsuit against Gammons, alleging that she was the driver of the pickup truck, not Conway. Gammons answered the complaint admitting that she was the driver of the pickup truck. Later, the answer was amended to show that Conway was the driver of the pickup truck. Gammons then moved for summary judgment *Page 874 
on the issues of accord and satisfaction, judicial estoppel, and equitable estoppel. The trial court denied the motion, but limited the issues to be resolved. The trial court stated that the releases executed by the Scotts would preclude a cause of action against Gammons, "unless there was some misrepresentation, or concealment of facts, absences of good faith, lack of understanding of legal rights of the nature and effect of the releases or lack of adequate consideration." Gammons filed a second motion for summary judgment, arguing that she should be dismissed from the action, or the case should be bifurcated on the issue of fraud. The trial court granted Gammons's motion for summary judgment on February 26, 2007.
 ¶ 3. The Scotts now appeal the grant of summary judgment and cite the following issues: (1) the trial court erred in granting Gammons's motion for summary judgment when another tortfeasor paid consideration to obtain the release, and the release did not name Gammons as a party to be released; (2) the trial court erred in dismissing the cause of action brought by the Scotts against Gammons on the alternative theories of accord and satisfaction, judicial estoppel, or equitable estoppel; (3) the trial court erred in ruling that Gammons was a beneficiary of the general release; and (4) the trial court erred in granting summary judgment when the issue of whether "adequate consideration" had been paid was disputed. Issues II, III, and IV will be discussed together as they all relate to the issue of accord and satisfaction.
 ¶ 4. Finding no error, we affirm.
 STANDARD OF REVIEW ¶ 5. In reviewing a trial court's grant of summary judgment, this Court employs a de novo standard of review.Anglado v. Leaf River Forest Prods., 716 So.2d 543,547 (¶ 13) (Miss. 1998). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." M.R.C.P. 56(c). This Court must consider all of the evidence before the trial court in the light most favorable to the non-moving party. Palmer v.Anderson Infirmary Benevolent Ass'n, 656 So.2d 790, 794
(Miss. 1995). The party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). The entry of summary judgment is mandated if the non-movant "fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." Galloway v. Travelers Ins. Co., 515 So.2d 678,683 (Miss. 1987) (citation omitted).
 DISCUSSION I. WAS GAMMONS RELEASED FROM LIABILITY EVEN THOUGH SHE WAS NOT SPECIFICALLY NAMED IN THE GENERAL RELEASE?
 ¶ 6. The Scotts argue that the trial court erred in granting summary judgment in favor of Gammons because it was disputed whether Gammons or Conway was the driver of the pickup truck. They argue that if Conway was the driver, Conway would be liable for his actions, and Spencer would be liable as the owner of the vehicle. The Scotts' position is that if Gammons is found to be the driver, then they can attempt to collect from Gammons's insurance company as a secondary *Page 875 
source of liability. If Gammons is found to be the driver, they argue that Gammons would be liable as the driver of the vehicle, and Conway and Spencer would be liable for negligent entrustment. However, we agree with the trial court that this issue is not relevant. We find that the releases signed by the Scotts released Direct, Spencer, and the driver of Spencer's vehicle — whomever that may have been — from liability.
 ¶ 7. The releases executed by the Scotts constituted valid contracts, and the Scotts do not allege fraud or misrepresentation in the formation of the contracts. Since the validity of the contracts are not disputed, we must look to the "four corners" of the contracts to determine the intent of the parties. One South, Inc. v. Hollowell, 963 So.2d 1156,1162 (¶ 10) (Miss. 2007) (citation omitted). "The primary purpose of all contract construction principles and methods is to determine and record the intent of the contracting parties."Id. (quoting Facilities, Inc. v. Rogers-UsryChevrolet, Inc., 908 So.2d 107, 110 (¶ 6) (Miss. 2005)). "Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent."Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.,857 So.2d 748, 752-53 (¶ 10) (Miss. 2003).
 ¶ 8. The final release and indemnifying agreement with Direct states that the Scotts:
 do hereby fully, completely and finally release and forever discharge and acquit John Spencer and Direct . . . and any other person, firm or corporation who may, in any manner, be liable, (hereinafter "the Released Parties"), of and from any and all demands, judgments and causes of actions, suits at law or in equity, past or future, and any and all claims of every kind . . . for or on account of bodily injury damages sustained by the Undersigned, in connection with the automobile accident . . .
The agreement with Direct goes on to state, "this Release covers not only past or known claims or damages . . . but any and all claims of every kind and description that the Undersigned and any relatives, heirs or assigns have now or may ever have, both direct and derivative, against the Released Parties herein related to such incident."
 ¶ 9. The Scotts argue that Gammons was not released from liability because she was not mentioned by name in the general releases. The Scotts cite to two Mississippi Supreme Court cases to support their position. They argue that Smith v.Falke, 474 So.2d 1044 (Miss. 1985) and Country Club ofJackson, Inc. v. Saucier, 498 So.2d 337 (Miss. 1986) held that only parties specifically named in releases are absolved of liability; thus, since Gammons was not specifically named, she is still subject to liability. We find the case at hand distinguishable from these two cases.
 ¶ 10. In Falke, the plaintiff driver brought an action against the drivers of two vehicles, which struck her vehicle from behind. Falke, 474 So.2d at 1045. The plaintiff released the second automobile from liability upon payment by its insurance carrier for the policy limits.Id. Based on the release, the first driver filed a motion to dismiss the action pending against him, arguing that he was a third-party beneficiary to the release. Id.
In rejecting this argument, the supreme court held that "in a release contract a party releases only those parties whom he intends to release." Id. at 1047. In Saucier, the plaintiff, who was injured in an automobile accident while riding as a passenger, entered into a settlement and release with the estate of the driver and the driver's insurer.Saucier, 498 So.2d at 338. The plaintiff then filed suit against *Page 876 
another tortfeasor, a country club, for allegedly furnishing alcohol to the driver while he was visibly intoxicated. Id. The supreme court determined that the country club was not part of the release as the parties did not intend for the country club to benefit from the release, and the country club was "a stranger to the release contract and paid no consideration for it, nor was consideration paid for its benefit." Id. at 339.
 ¶ 11. Both Falke and Saucier involved releases wherein a third party was attempting to benefit from the release of another tortfeasor. In this case, only two parties are involved — the Scotts and the driver of the Spencer vehicle. The Spencer vehicle had only one driver; either Conway or Gammons was driving the pickup truck. Regardless of who was driving, Direct had the duty to defend and indemnify the driver. Further, while the Scotts argue that the Direct releases fail to specifically name Gammons as driver, we must also note that the releases did not name Conway as the driver either. It is clear from the language of the releases that Direct released the driver of Spencer's vehicle — whomever that may have been.
 ¶ 12. As for the State Farm releases, we find that Gammons was released under this settlement also.[1] Although the State Farm releases state that the Scotts' vehicle was "allegedly struck by an automobile being driven by Christopher D. Conway," we do not find that this meant the settlement was contingent on Conway being the driver of the vehicle. The releases with State Farm go on to state that the Scotts were "releasing and discharging forever any and all claims of every kind and description which [they] . . . have now or may ever have against the Released Parties arising out of the September [8], 2000, incident mentioned herein." We find that this release referred to the driver of the Spencer vehicle, whether that was Conway or Gammons.
 II. DID THE GENERAL RELEASE CONSTITUTE AN ACCORD AND SATISFACTION?
 III. WAS GAMMONS A BENEFICIARY OF THE GENERAL RELEASE?
 IV. WAS ADEQUATE CONSIDERATION PAID ON GAMMONS'S BEHALF FOR THE RELEASE?
 ¶ 13. Having found the releases valid and unambiguous, we find that the releases constituted accord and satisfaction. Also, we find that the Scotts are barred from further claims against Gammons in this case based on the theories of equitable estoppel and judicial estoppel.
 ¶ 14. "[A]ccord and satisfaction consists of four basic requirements." Royer Homes, 857 So.2d at 753 (¶ 16). The four basic requirements are as follows:
 First, something of value must be offered in full satisfaction of demand. Second, the offer must be accompanied by acts and a declaration which amount to a condition that if the thing offered is accepted, it is accepted in satisfaction. Third, the party offered the thing of value is bound to understand that if he takes it, he takes it subject to the conditions. Last and fourth, the party must actually accept the item offered.
Id. (citations omitted).
 ¶ 15. The Scotts received a $40,000 settlement from Direct. The Scotts signed the release, which declared that they were *Page 877 
"releasing and discharging forever any and all claims of every kind and description" arising out of the accident in exchange for the settlement. Finally, the Scotts do not dispute having accepted the settlement money. We find that the trial court properly found accord and satisfaction by the consideration paid for the release. It is not logical to think that Direct paid $40,000 to settle this claim and did not intend to settle any and all claims.
 ¶ 16. We also find that the Scotts are barred from bringing a claim against Gammons by the doctrine of equitable estoppel. "The doctrine of equitable estoppel requires proof of a belief and reliance on some representation, a change of position as a result of the representation, and detriment or prejudice caused by the change of position." Stingley v. Redland Ins.Co., 943 So.2d 86, 89 (¶ 11) (Miss.Ct.App. 2006). The Scotts argue that they were not barred by equitable estoppel because Gammons could not show a change of position in reliance upon representations made by the Scotts, nor any resulting detriment or prejudice. Direct, as the representative of Gammons, offered a settlement based on representations made by the Scotts, and Direct thought it had extinguished all claims arising from the car accident. Yet, Direct continues to have to expend resources to represent Gammons in this case. We find that this shows reliance and change in position. Thus, the Scotts are barred by equitable estoppel from pursuing a matter that has already been settled.
 ¶ 17. Finally, the Scotts assert they are not barred under the theory of judicial estoppel because the releases involved the liability of William Scott and not Gammons. Their argument is that "Pauletta Scott and Brenda Greenwood . . . signed documents in another case all together, prepared by State Farm Insurance Company's lawyers, that stated that they were accepting money from William Scott's insurance companyfor a release of liability for William Scott because Chris Conway allegedly was in an accident with William Scott." They argue that since the documents were in a different court with different proceedings that they are not barred by judicial estoppel.
 ¶ 18. "Judicial estoppel precludes a party from asserting a position, benefitting from that position, and then, when it becomes more convenient or profitable, retreating from that position later in the litigation." Richardson v.Comes, 903 So.2d 51, 56 (¶ 17) (Miss. 2005) (quotingDockins v. Allred, 849 So.2d 151, 155 (¶ 18) (Miss. 2003)). "Because of judicial estoppel, a party cannot assume a position at one stage of a proceeding and then take a contrary stand later in the same litigation." Id. The Scotts took the position before the chancery court that Conway was the driver of the Spencer vehicle. After having received a settlement, the Scotts filed another lawsuit asserting the opposite — that Gammons was the driver — in hopes of collecting from Gammons's insurer. Despite it not being in the same proceeding, the second suit involved the same issues, same parties, and same insurance companies. We find the Scotts are precluded from changing their position in this case under the theory of judicial estoppel.
 ¶ 19. We find that the circuit court did not err in granting summary judgment in favor of Gammons. Therefore, we affirm.
 ¶ 20. THE JUDGMENT OF THE MARSHALL COUNTY CIRCUIT *Page 878 COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL AREASSESSED TO THE APPELLANTS.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.
[1] The Scotts' vehicle was insured by State Farm. Gammons was personally insured by State Farm through her own separate policy. The release quoted from here was signed by the Scotts to release State Farm in its capacity as insurer of the Scotts' vehicle.
 *Page 270