# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-01052-SCT

## CONSOLIDATED WITH

## NO. 2012-CA-00653-SCT

*KATHRYN SCHROEDER CLARK, WITH POWER*
*OF ATTORNEY FOR HELEN SCHROEDER*

*v.*

*LISA YOUNGER NEESE, ADMINISTRATRIX OF*
*THE ESTATE OF HARRY L. SCHROEDER,*
*DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/01/2016 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| TRIAL COURT ATTORNEYS: | DUNBAR DOWDY WATT |
| | DAN W. WEBB |
| | WAYNE DOWDY |
| | ROECHELLE RYANN MORGAN |
| | NORMA CARR RUFF |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DUNBAR DOWDY WATT |
| | WAYNE DOWDY |
| ATTORNEYS FOR APPELLEE: | NORMA CARR RUFF |
| | DAN W. WEBB |
| | ROECHELLE RYANN MORGAN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 08/16/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., MAXWELL AND ISHEE, JJ.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.    Helen Schroeder appeals the Lowndes County Circuit Court's grant of summary judgment to the Estate of Harry Schroeder, arguing that the trial court erred in finding that the Estate was entitled to judgment as a matter of law on the grounds of release, res judicata, and accord and satisfaction. We reverse and remand to the trial court for further proceedings.

## FACTS & PROCEDURAL HISTORY

¶2.    This is the second time we have considered an appeal by Helen Schroeder ("Helen"), after the grant of summary judgment to the Estate of Harry Schroeder ("Harry").[1] The facts regarding the car accident and the original cause of action are set out in this Court's opinion in *Clark v. Neese ("Clark I")*, 131 So. 3d 556, 558 (Miss. 2013):

> A log truck driven by Royce Sullivan collided with the rear of an automobile being driven by Harry Schroeder, who had just pulled his car onto a highway in Lowndes County. Harry died as a result of the accident, and his wife, Helen–who was a passenger in her husband's car–suffered severe injuries, permanent disability, and diminished capacity. Helen–both individually, and as one of Harry's wrongful-death beneficiaries–sued Sullivan in federal court, alleging that Sullivan's negligence had caused Harry's death and her permanent disability. . . . Sullivan moved for summary judgment at the close of discovery, arguing that the uncontradicted evidence established Harry's negligence as the sole cause of the accident. In denying summary judgment, the federal judge stated that the evidence created a jury question as to Sullivan's fault, and that "plaintiffs do not appear to dispute Harry Schroeder's potential contributory negligence." The parties settled and agreed to a release of claims, and the district court dismissed the case.

Following the settlement agreement, release, and subsequent dismissal of the action against Sullivan, Helen filed suit against Harry in the Circuit Court of Lowndes County, Mississippi. *Id.* Helen alleged that Harry negligently had failed to yield the right of way and pulled in

---

[1]Kathryn Clark filed suit on behalf of her mother, Helen Schroeder. The defendant, Harry L. Schroeder, deceased, is the husband of Helen Schroeder and father of Kathryn Schroeder Clark.

front of Sullivan's log truck at an extremely slow rate of speed, causing the accident which resulted in Helen's permanent disability. *Id.*

¶3.     In response, on August 17, 2010, Harry moved for summary judgment and argued that Helen had pleaded facts in her complaint that were materially different from the facts she had alleged in the federal district court. *Id.* Harry asserted that the trial court should grant summary judgment based on the doctrines of judicial and equitable estoppel. *Id.* Harry also argued that the settlement and release of claims against Sullivan in federal court barred the circuit-court action under the doctrines of contractual release, accord and satisfaction,[2] and res judicata. *Id.*

¶4.     The trial court granted summary judgment in favor of Harry and found that Helen was judicially estopped from bringing a claim against Harry. *Id.* The trial court reasoned that, although Helen discovered Harry's potential fault during discovery, she had made the conscious decision not to add Harry as a defendant to avoid losing diversity jurisdiction, and as a result, her failure to add Harry in federal court barred her from bringing suit in the circuit court.[3] *Id.* The trial court declined to rule on the merits regarding Harry's arguments of equitable estoppel, accord and satisfaction, and merger. *Id.*

---

[2] Helen contends that Harry failed to raise the affirmative defense of accord and satisfaction in the seven years that this case has been pending; however, the record is clear that the defense of accord and satisfaction was raised at the trial-court level.

[3] When ruling on Sullivan's motion for summary judgment during the federal suit, the federal district court acknowledged that "the alleged contributory negligence of Harry Schroeder was a prominent (and obvious) point of contention."

¶5. On December 12, 2013, this Court reversed the judgment and remanded the case. ***Id.*** at 562. In regard to whether Helen's suit was barred by judicial estoppel, this Court held:

> [W]e need not determine whether Helen's positions actually were knowingly inconsistent because we find it abundantly clear from the record that, when the federal district court denied Sullivan's motion for summary judgment, [it] was not required to accept or rely on Helen's prior position—an absolute requirement for the application of judicial estoppel.

***Id.***

¶6. In reversing the trial court's grant of summary judgment, this Court directed the trial court to rule on Harry's claims of equitable estoppel, accord and satisfaction, contractual release, and merger. ***Id.***

¶7. On remand, Harry again moved for summary judgment, which the trial court granted on the basis of res judicata, accord and satisfaction, and contractual release.

¶8. Aggrieved, Helen again has appealed, raising the following issues:

> **I.** **Whether the Circuit Court of Lowndes County, Mississippi ("trial court") erred in granting summary judgment on the basis that the suit was barred by the doctrine of merger because all four elements of res judicata were satisfied.**

> **II.** **Whether the trial court erred in finding that the satisfaction, release, and indemnity agreement ("release agreement") was "clear, definite, explicit, harmonious in all its provisions, and free from ambiguity throughout," and therefore, was a valid release of all claims stemming from the collision.**

> **III.** **Whether the trial court improperly determined that the release agreement, coupled with the $300,000 payment, and the plaintiff's subsequent acceptance of the payment, operated as an accord and satisfaction of all the plaintiff's claims stemming from the cause of action.**

**STANDARD OF REVIEW**

¶9.     We review the trial court's grant of summary judgment de novo.  ***City of Jackson v. Shavers***, 97 So. 3d 686, 688 (Miss. 2012) (citing ***Arcadia Farms P'ship v. Audubon Ins. Co.***, 77 So. 3d 100, 104 (Miss. 2012)).

**DISCUSSION**

### I.     Whether Helen's suit is barred by res judicata.

¶10.     In its order granting summary judgment, the trial court found, "Because the four identities of res judicata are present, the Court rules that the doctrine of merger as it relates to res judicata applies to this action."  Merger is a bar under res judicata for an action that should have been litigated, rather than a claim that actually was litigated. *See* Jeffrey Jackson & Mary Miller, *Encyclopedia of Mississippi Law* § 14:6 (2001). *See also* ***Hill v. Carroll Cty.***, 17 So. 3d 1081,1084-85 (Miss. 2009).  Helen argues that the trial court erred in barring her suit under the merger doctrine because the elements required for res judicata are not met. Helen asserts that, since Harry was not a party to the original suit, the identities of the parties are different in the two suits, and the federal district court's final judgment was "not a judgment on the merits" as contemplated by the doctrine of res judicata.[4]

¶11.     Conversely, Harry responds that the doctrine of merger is appropriate, because Helen's claims for personal injuries resulting from the accident merged into the agreed

---

[4]Helen also asserts the federal court was aware of potential contributory negligence of Harry presumably to show no issue was made to require that Harry be made a party to the settlement.

judgment against Sullivan. As a result, Harry contends that Helen is barred from continuing to pursue her claims against Harry that could have been asserted in the federal suit.

¶12. The doctrine of res judicata operates to bar a subsequent attempt to litigate a claim already decided. *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 232 (Miss. 2005). Further, the doctrine:

> [R]eflects the refusal of the law to tolerate a multiplicity of litigation. It is a doctrine of public policy designed to avoid the "expense and vexation" of attending multiple lawsuits, conserve judicial resources and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions.

*Little v. V & G Welding Supply, Inc.*, 704 So. 2d 1336, 1337 (Miss. 1997) (citing *Montana v. United States*, 440 U.S. 147, 153-154, 99 S. Ct. 970, 973-74, 59 L. Ed. 2d 210 (1979)).

¶13. Generally, four identities must be present before the doctrine of res judicata will be applicable: (1) identity of the subject matter of the action, (2) identity of the cause of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made. *Hinton v. Rolison*, 175 So. 3d 1252, 1258 (Miss. 2015) (quoting *Anderson v. LaVere*, 895 So. 2d 828, 832 (Miss. 2004)). When those identities are present, res judicata precludes "parties from litigating in a second action claims within the scope of the judgment of the first action." *Anderson*, 895 So. 2d at 832.

### A.    Identity of the Subject Matter of the Action

¶14. Res judicata "bars a second action between the same parties on the subject matter directly involved in the prior action." *Harrison*, 891 So. 2d at 232. This Court's ruling in *Harrison* referred to subject matter as "the substance of the lawsuit." *Id*. at 232-33. In the current case, the subject matter presented before both the federal and state suits is the same.

6

In **Bell v. Dixon**, the Court of Appeals found that where both cases concerned the same automobile accident, the subject-matter identity of res judicata was met. **Bell v. Dixon**, 976 So. 2d 965, 968 (Miss. Ct. App. 2008); *see also* **Little v. V & G Welding Supply, Inc.**, 704 So. 2d 1336, 1338 (Miss. 1997) (holding that the subject matter of a federal suit and state suit, both of which concerned who was responsible for the death of two welders, satisfied the subject-matter requirement of res judicata). Likewise, in the current action, the subject matter of both the federal and state lawsuits was the automobile collision that occurred between Sullivan and Harry. Therefore, this element of res judicata is met.

### B.     Identity of the Cause of Action

¶15.    This identity requires the "cause of action" in both suits to be the same. This Court has defined "cause of action" as the underlying facts and circumstances upon which a claim has been brought. **Hill**, 17 So. 3d at 1085. Moreover, this Court has stated that "[w]here one has a choice of more than one theory of recovery for a given wrong, she may not assert them serially in successive actions but must advance all at once on pain of the bar of res judicata." **Walton v. Bourgeois**, 512 So. 2d 698, 702 (Miss. 1987).

¶16.    This Court follows a transactional approach to determine whether the identity of the cause-of-action requirement is met. **Hill**, 17 So. 3d at 1086. Specifically, courts are to "look past the legal bases asserted and rely more on the factual and transactional relationship between the original action and the subsequent action." *Id.* In defining transaction, this Court looked to the approach found in the Restatement (Second) of Judgments and articulated by the Supreme Court of the United States:

> [C]auses of action are the same if they arise from the same "transaction"; whether they are products of the same "transaction" is to be determined by "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

*Harrison*, 891 So. 2d at 234 (quoting *Nevada v. United States*, 463 U.S. 110, 131, 103 S. Ct. 2906, 77 L. Ed. 2d 509 (1983)).

¶17.    Both parties disagree as to when Helen discovered she had a potential claim against Harry.  However, Helen does not contend that the identity of the causes of action against Harry and Sullivan are different.  The legal theory contained in Helen's federal suit against Sullivan is based on the same underlying facts and circumstances as the case at bar. Helen argues that both Sullivan and Harry were negligent in causing the accident. Helen charged in the federal action that Sullivan's liability for the wreck was based on his speeding, while Helen now contends that Harry failed to yield before entering onto Highway 45. Thus, both causes of action stem from the same set of underlying facts, and thus both actions arise from the same transaction. The requirement that the cause of action must be the same is satisfied.

### C.    Identity of the Parties to the Cause of Action

¶18.    For the third identity to be satisfied under the doctrine of res judicata, the parties must be in privity with one another. *Bell*, 976 So. 2d at 968. While a nonparty defendant can assert res judicata if it is in "privity" with the named defendant, there is no one prevailing definition of privity. *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992). It is not necessary, however, to use strict identity. *See Little*, 704 So. 2d at 1339 (privity existed between different defendants because in both cases defendants were distributor-retailers who

8

were alleged to have caused the death of the welders). When trying to determine whether privity exists, this Court has looked to the comment to Section 83 of the Restatement of Judgments (1942), which provides:

> Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to the interests involved in the action, as if they were parties. The statement that a person is bound. . . as a privy is a short method of stating that under the circumstances and for the purpose of the case at hand he is bound by. . . all or some of the rules of res judicata by way of merger, bar or collateral estoppel.

*Little*, 704 So. 2d at 1339 (citing *Restatement of Judgments* § 83 cmt. (1942)). "Thus, 'privity' is . . . a broad concept, which requires us to look to the surrounding circumstances to determine whether claim preclusion is justified." *EMC Mortg. Corp. v. Carmichael*, 17 So. 3d 1087, 1091 (Miss. 2009) (quoting *Hogan v. Buckingham*, 730 So. 2d 15, 18 (Miss. 1998)).

¶19.     Nevertheless, the doctrine of res judicata bars only claims against parties who were adverse to each other in the original action. *Holland v. Mayfield*, 826 So. 2d 664, 671 (Miss. 1999), *abrogated on other grounds by Harrington v. Office of Miss. Sec'y of State*, 129 So. 3d 153, 161 (Miss. 2013) (citing *Heller Fin., Inc. v. Grammco Computer Sales, Inc.*, 71 F.3d 518, 523 (5th Cir. 1996)). Further, parties are adversaries only as to those claims actually asserted. *Jackson v. Lemler*, 83 Miss. 37, 42-44, 35 So. 306, 307-08 (1903).

¶20.     Sullivan and Harry are not in privity with one another. Instead, both were independent tortfeasors who Helen alleged were contributorily negligent in causing the accident. Privity, the third element of res judicata, is not satisfied.

9

### D. The Identity of the Quality or Character of a Person Against Whom the Claim is Made

¶21. This Court has noted that it "has not explicitly defined the identity of the quality of the character of a person against whom the claim is made." *Hill*, 17 So. 3d at 1086. Examples of this identity and its application exist, particularly where the parties are the same in the relevant actions and are acting in the same interests or capacity. *See Avakian v. Wilmington Trust, Nat'l Ass'n*, 242 So. 3d 961, 970 (citing *Hill*, 17 So. 3d at 1086-87). However, "[w]here someone is sued in a limited or representative capacity in one cause and then personally in another, the party's quality or character is not the same in both actions." *Bell*, 976 So. 2d at 968.

¶22. In the original federal case, Helen sued Sullivan, both individually and as a wrongful-death beneficiary. Harry was not named as a party plaintiff or a party defendant. Moreover, Harry's estate did not exist in any form during the time the original suit was pending. Thus, the identity of the quality or character element of res judicata is not met.

### E. Determination on the Merits

¶23. Even if all four elements of res judicata are satisfied, the prior judgment also must be final and on the merits. *Anderson*, 895 So. 2d at 832-33. *See also Kremer v. Chem. Constr. Corp.*, 456 U.S. 481 n.22, 482, 102 S. Ct. 1883, 1898, 72 L. Ed. 2d 262 (1982) (for res judicata to apply, there must have been a full and fair opportunity to litigate, and a state court may not grant preclusive effect to a judgment that violated the applicable requirements of the Due Process Clause); *Harrison*, 891 So. 2d at 232 (res judicata applies when a court of competent jurisdiction has entered a final judgment on the merits, and "res judicata precludes

claims that were actually litigated in a previous action."). Furthermore, not all judgments are on the merits. ***Bowen v. Bowen***, 688 So. 2d 1374, 1384 (Miss. 1997).

¶24. The Fifth Circuit has found that the settlement and entry of a judgment of dismissal in a personal-injury action does not preclude a subsequent suit on the same issue. *See* ***American Home Assurance Co. v. Chevron, USA, Inc.***, 400 F.3d 265, 272 (5th Cir. 2005). In determining whether a consent judgment is "on the merits," the Fifth Circuit has held that when a voluntary dismissal is reached, "there is no judgment, and future litigation is not barred by res judicata[.]" ***Kaspar Wire Works Inc.***, ***v. Leco Eng'g & Mach., Inc.***, 575 F.2d 530, 537 (5th Cir. 1978). Specifically, the court in ***Kaspar*** held:

> Judicial finality the predicate for res judicata arises only from a final decision rendered after the parties have been given a reasonable opportunity to litigate a claim before a court of competent jurisdiction. Thus, if the parties to a suit enter into an extrajudicial settlement or compromise, there is no judgment, and future litigation is not barred by res judicata or collateral estoppel though, of course a court may dismiss litigation thereafter filed on the same claim on the basis that the parties have by contract ended their controversy.

*Id.* at 537-38.

¶25. Here, the record is clear that a settlement of $300,000 was offered by Sullivan, accepted by Helen, and the case was dismissed. However, a voluntary dismissal under Federal Rules of Civil Procedure 41(a)(2) is not on the merits and is not given preclusive effect under the doctrine of res judicata. ***Stewart v. Guar. Bank & Trust Co. of Belzoni***, 596 So. 2d 870, 872 (Miss. 1992). The release agreement clearly bars Helen from pursuing an additional cause of action against Sullivan. However, it does not preclude Helen from pursuing a separate cause of action against Harry, who was not a party to the original suit.

11

Therefore, the settlement and judgment of the federal court was not a final determination "on the merits" in regard to the current cause of action against Harry.

¶26. Thus the trial court improperly granted summary judgment on the basis of res judicata.

**II.    Whether the release agreement releases the Estate of Harry Schroeder.**

¶27. Helen claims that the trial court erred in granting Harry's motion for summary judgment on the basis that the Satisfaction, Release, and Indemnity Agreement ("release") was meant to release any and all claims stemming from the initial collision, including Helen's claim against Harry. The trial court found that the release was "clear, definite, explicit, harmonious in all its provisions, and free from ambiguity throughout."

¶28. This Court previously has been confronted with the issue of whether a plaintiff may pursue a remedy against one joint tortfeasor after another joint tortfeasor was released by the plaintiff from liability. For instance, in *Medley v. Webb*, 288 So. 2d 846, 848-49 (Miss. 1974), this Court found that there is "no doubt that a plaintiff may sue another joint tortfeasor" after releasing the other alleged tortfeasor from liability. Further, this Court has delineated the difference between being jointly liable and being a joint tortfeasor. *See J&J Timber Co. v. Broome*, 932 So. 2d 1, 7 (Miss. 2006) ("Joint tortfeasor claims arise where the separate wrongful conduct of two or more individuals combine to cause an injury, and each because his wrongful conduct bears some responsibility for the injury." (quoting *Richardson v. APAC-Mississippi, Inc.*, 631 So. 2d 143, 151 n.7 (Miss. 1994))). The key distinction is whether the claimant is settling with one joint tortfeasor and then pursuing a remedy against another, independently liable, tortfeasor. *Id.*

12

¶29.    In *Smith v. Falke*, 474 So. 2d 1044, 1047 (Miss. 1985), this Court sought to determine whether the plaintiff had the right to pursue an action against a driver who struck her vehicle from behind after she had released the second driver who had caused the chain reaction. The first driver argued that he was a third-party beneficiary of the release. *Id.* at 1045. This Court rejected that argument because "in a release contract a party releases only those parties whom he intends to release." *Id.* at 1047. Likewise in *Country Club of Jackson v. Saucier*, 498 So. 2d 337, 338 (Miss. 1986), the plaintiff, who had been injured in an automobile riding as a passenger, entered into a settlement and release with the estate of the driver and the driver's insurer. *Id.* The plaintiff then filed suit against the Jackson Country Club, which the plaintiff asserted was another joint tortfeasor, as the country club allegedly had furnished alcohol to the driver while he was visibly intoxicated. *Id.* This Court found that the country club was not intended to be released and therefore was "a stranger to the release contract and paid no consideration for it, nor was consideration paid for its benefit." *Id.* at 339. Thus, this Court must look to the language of the release agreement to find whether Helen had intended to release Harry.

¶30.    This Court applies a three-tiered process to contract interpretation. *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 351 (Miss. 1990). First, the Court must look to the "four corners" of the agreement and review the actual language the parties used in their agreement. *Id.* at 352. When the language of the contract is clear and unambiguous, "the parties' intent must be effectuated." *Id.*

13

¶31. Helen contends that the language of the release agreement is unambiguous and releases only the specific parties mentioned within the release. The release contained the following relevant provisions:

> [F]or and in consideration of the payment of the sum of $300,000. . . I HELEN SCHROEDER as wrongful death beneficiaries of Harry L. Schroeder, do hereby fully, finally and forever release, remise, and discharge ROYCE SULLIVAN, ROYCE SULLIVAN TRUCKING, PROGRESSIVE INSURANCE COMPANY, their employers, principals, agents, officers, employees, servants, successors and insurers (**hereinafter known as Releasees**"), from any and all claims, demands, actions, causes of action or suits of any kind whatsoever, known or unknown, for damages and injuries of any kind. . . which may have occurred on our about May 23, 2007, when the vehicle operated by Harry Schroeder in which Helen Schroeder was a passenger was struck by the vehicle operated by Royce Sullivan at the Intersection of U.S. Highway 45.
>
> The undersigned declare that the terms of this Release have been completely read and are fully understood and voluntarily accepted for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident against **any of the parties aforementioned**.

(Emphasis added.)

¶32. Harry cites ***Scott v. Gammons***, 985 So. 2d 872, 875 (Miss. Ct. App. 2008), in support of his position that the release agreement applies to Harry because the court held there that the release that had been signed releasing one joint tortfesor, released any other joint tortfeasor who may have been discovered. Unlike the current case, however, the release agreement that had been executed in ***Scott*** designated not only the sole alleged tortfeasor, but also "any other person, firm or corporation who may, in any manner, be liable" as releasees. ***Id.***

14

¶33. Looking to the language of the release agreement in the current case, the only parties specifically designated by the release were: (1) Helen Schroeder, ("the Undersigned"); (2) Helen Schroeder, Kathryn Schroeder Clark, and John Schroeder, ("Wrongful Death Beneficiaries of Harry Schroeder"); and (3) Royce Sullivan, Royce Sullivan Trucking, and Progressive Gulf Insurance Company, ("Releasees"). The agreement is not ambiguous as to who was released. Unlike the plaintiff in **Scott**, Helen specifically named the persons and entities she intended to release from future claims arising from the accident. Even further, the release agreement stated that only the "parties aforementioned" were precluded forever from "any further or additional claims arising out of the aforesaid accident." Harry was not among those released, nor was he "any other parties who may be liable." Therefore, we find that the trial court erred in granting summary judgment on the basis of the release agreement between Helen and Sullivan, to which Harry was not a signatory.

### III. Whether Helen's suit is barred under the doctrine of accord and satisfaction.

¶34. Mississippi follows the majority rule "that for a release of one joint tortfeasor to release other joint tortfeasors, the satisfaction received by the injured party must be intended and must be accepted as full and total compensation for damages sustained." **Falke**, 474 So. 2d at 1045. According to the ruling in **Falke**, a plaintiff never should surrender his cause of action unless he has received such satisfactory compensation that he is "no longer entitled to maintain it." **Id.** at 1046 (citing Prosser, *Law of Torts* § 301 (4th ed. 1971).

¶35. This Court consistently has recognized that the elements of accord and satisfaction consist of four basic requirements. **Royer Homes of Miss., Inc. v. Chandeleur Homes Inc.**,

15

857 So. 2d 748, 753 (Miss. 2003). First, something of value must be offered in full satisfaction of the demand. *Id.* at 754 (citing *Wallace v. United Miss. Bank*, 726 So. 2d 578, 589 (Miss. 1998)). Second, the offer must be accompanied by acts and a declaration which amount to a condition that if the thing is accepted, it is accepted in satisfaction. *Id.* Third, the party offering the thing of value is bound to understand that if he takes it, he takes it subject to conditions. *Id.* Fourth, the party actually must accept the item offered. *Id.*

¶36.    In order to constitute an effective accord and satisfaction, that which is accepted "must have been accepted in full satisfaction of the demand in question." *Austin v. Padgett*, 678 So. 2d 1002, 1004 (Miss. 1996).  Here, the $300,000 settlement accepted in "satisfaction of all claims," according to the release agreement, referred only to those claims of the designated "Releasees" against Sullivan. Helen made no demand against Harry, nor was Harry a party to the release agreement in the federal suit. Thus, the first element of accord and satisfaction is not met. Accordingly, we find that the trial court erred in granting Harry's motion for summary judgment under the doctrine of accord and satisfaction.

## CONCLUSION

¶37.    For the foregoing reasons, we reverse the trial court's grant of summary judgment and remand this case to the trial court for further proceedings consistent with this opinion.

¶38.    **REVERSED AND REMANDED.**

**RANDOLPH AND KITCHENS, P.JJ., KING, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.  COLEMAN, J., NOT PARTICIPATING.**