# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-00514-SCT

*GULFPORT OB-GYN, P.A.*

*v.*

*DUKES, DUKES, KEATING & FANECA, P.A. AND*
*JE'NELL B. BLUM*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/28/2018 |
| TRIAL JUDGE: | HON. JAMES D. BELL |
| TRIAL COURT ATTORNEYS: | DONALD C. DORNAN, JR. |
| | PHILIP W. THOMAS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PHILIP W. THOMAS |
| ATTORNEYS FOR APPELLEES: | DONALD C. DORNAN, JR. |
| | STEPHANIE GEE BEAVER |
| NATURE OF THE CASE: | CIVIL - LEGAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 08/29/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.     In this legal-malpractice case, Gulfport OB-GYN contends that Dukes, Dukes, Keating, and Faneca negligently drafted a noncompetition covenant for one of its physicians, leading to a substantial financial loss when the physician left to start her own practice. The circuit court granted summary judgment to the defendants after finding Gulfport OB-GYN had failed to produce sufficient evidence that it would have received a better deal but for the

attorneys' alleged negligence, i.e., Gulfport OB-GYN failed to prove that the alleged negligence caused it damages. We agree and affirm.

**FACTS**

¶2. Gulfport OB-GYN is a professional association of physicians specializing in obstetrical and gynecological care. In 2008, it hired the law firm Dukes, Dukes, Keating & Faneca, P.A., to assist in negotiating the hiring of Dr. Donielle Daigle and to prepare an employment agreement for her. The attorney primarily assigned to the matter was Ja'Nell Blum. The negotiations culminated in Dr. Daigle's hiring, subject to an employment agreement prepared by Blum and executed by both principals. The employment agreement contained a noncompetition covenant with substantially the same language Gulfport OB-GYN had accepted in previous employment agreements prepared by another law firm. The noncompetition covenant in Dr. Daigle's agreement read, in relevant part,

Covenant Not To Compete.

a. Employee agrees that for a period three (3) years following termination of her employment by the Employer, regardless of cause (subject to Section 7(d)), she will not engage in any medical practice or perform any service directly or indirectly in competition with the medical practice of Employer, to include hospital staff positions, or have any interest in any capacity whatsoever in any enterprise that engages in such medical practice within a radius of fifty (50) miles from the Memorial Hospital at Gulfport, without the express written consent of the Employer. Further, during said three (3) year period, even if in compliance with the above fifty (50) mile radius provision, Employee agrees not to directly solicit, which includes, but is not limited to, direct mailings, emails, or telephone calls, either by Employee or any other person or entity acting on Employee's behalf, any patient who has been served by the Employer within three (3) years prior to the date her employment with Employer ends, whether by termination or resignation, or mutual agreement.

2

The agreement provided that under certain circumstances, enforcement of the noncompetition covenant could be waived in exchange for $150,000 in liquidated damages to Gulfport OB-GYN.

¶3.     Five years later, Dr. Daigle and another physician left Gulfport OB-GYN to establish their own practice.  They sued Gulfport OB-GYN for unpaid compensation and sought a declaratory judgment that the noncompetition covenant was unenforceable.  The departing physicians ultimately prevailed, with the chancery court holding the noncompetition covenant not applicable to Dr. Daigle because she left voluntarily and was not "terminated by the Employer."  The chancery court decision was initially appealed, but the dispute was later settled through mediation when Gulfport OB-GYN agreed to pay Dr. Daigle $425,000.  Gulfport OB-GYN then filed this legal-malpractice suit against Blum and her firm.

¶4.     Ultimately, the circuit court granted summary judgment to the defendants after finding that Gulfport OB-GYN had failed to produce evidence Dr. Daigle would have accepted the employment agreement with a more comprehensive noncompetition covenant.  Gulfport OB-GYN has appealed from that judgment.

## STANDARD OF REVIEW

¶5.     This Court reviews a grant or denial of summary judgment de novo.  ***Hardy v. Brock***, 826 So. 2d 71, 74 (Miss. 2002).  "We view the evidence 'in the light most favorable to the party against whom the motion has been made.'"  ***Olier v. Bailey***, 164 So. 3d 982, 986 (Miss. 2015) (quoting ***Double Quick, Inc. v. Moore***, 73 So. 3d 1162, 1165 (Miss. 2011)).  On the

3

other hand, the duty of care owed by Blum and her firm to their client is one of law, which this Court reviews de novo. ***Donald v. Amoco Prod. Co.***, 735 So. 2d 161, 174 (Miss. 1999).

## DISCUSSION

¶6.     The legal malpractice claim here alleges negligence and sounds in tort.  The four elements of a tort claim are "duty, breach of duty, causation between the breach of the duty and the injury, and actual damage." ***Bullard v. Guardian Life Ins. Co of Am.***, 941 So. 2d 812, 815 (Miss. 2006).  The dispute in today's case is over causation.  Under Mississippi law, causation has two aspects: the alleged negligent conduct must be shown to have caused the injury, in fact, and it must be shown to be the injury's legal or proximate cause. ***Norman v. Anderson Reg'l Med. Ctr.***, 262 So. 3d 520, 529 (Miss. 2019).  Both must be shown to recover on a claim of negligence. ***Id.***

¶7.     In a legal-malpractice action for a breach of the duty of care, the plaintiff "must establish proximate cause by the so-called 'trial-within-a-trial' test." ***Crist v. Loyacono***, 65 So. 3d 837, 842 (Miss. 2011).  The plaintiff must show that but for her attorney's negligence, she would have been successful in the underlying action. ***Id.*** (citing ***Wilbourn v. Stennett, Wilkinson & Ward***, 687 So. 2d 1205, 1215 (Miss. 1996)).  Proof of causation is always required when professional negligence is alleged. ***Id.***  In the transactional context, there may not be a trial or "case," but the same principles apply: causation "turns on whether the attorney's conduct was the but-for cause of the failure to obtain a more favorable result rather than success or failure in litigation." ***Frederick v. Wallerich***, 907 N.W.2d 167, 173 (Minn. 2018) (emphasis omitted); *see also* George S. Mahaffey, Jr., *Cause-In-Fact and the*

4

*Plaintiff's Burden of Proof with Regard to Causation and Damages in Transactional Legal Malpractice Matters: The Necessity of Demonstrating the Better Deal*, 37 Suffolk U.L. Rev. 393, 436-37 (2004). Thus, "[i]f the alleged error is the failure to obtain or advise of a provision, concession or benefit, the client must prove that the other party would have agreed." 3 Ronald E. Mallen and Jeffrey M. Smith, *Legal Malpractice* § 24.5 (updated 2019), Westlaw.

¶8. Commentators have noted that this rule is followed by a substantial majority of courts. *See* John M. Palmeri, Franz Hardy, Nicole Salamander Irby, *Better Deal or No Deal: Causation in Transactional Malpractice Cases*, 42 Colo. Law. 51, 51 (December 2013) (citing, "for example," **Viner v. Sweet**, 70 P.3d 1046 (Cal. 2003); **Serafin v. Seith**, 672 N.E.2d 302 (Ill. Ct. App. 1996); **Blackhawk Building Systems, Ltd. v. Aspelmeier, Fisch, Power, Warner and Engberg**, 428 N.W.2d 288 (Iowa 1988); **Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.**, 711 N.W.2d 811 (Minn. 2006); **Froom v. Perel**, 872 A.2d 1067 (N.J. Super. Ct. App. Div. 2005); **Hazel and Thomas, P.C. v. Yavari**, 465 S.E.2d 812 (Va. 1996); **Cannata v. Wiener**, 789 A.2d 936 (Vt. 2001)).

¶9. On appeal, Gulfport OB-GYN attempts to couch its cause of action as a separate species of professional malpractice, negligent draftsmanship, which it asserts is different from a transactional malpractice claim in that mere drafting does not have a "negotiation element," and thus there is no requirement that the other party would have agreed to the different terms the plaintiff now says should have been included in the contract. For this proposition, it mostly relies on **O'Brien v. Alfonso,** 240 So. 3d 471, 481 (Miss. Ct. App.

2018), and ***Kushner v. McLarty***, 300 S.E.2d 531 (Ga. Ct. App. 1983). Both of these cases are distinguishable from this case in a critical respect: they involved the allegation of negligence in the preparation of an instrument to effect a separate agreement between the parties. In ***O'Brien***, the attorney was hired to prepare a deed to effect a sale of real property the parties had already agreed to, but used the wrong legal description of the property. ***O'Brien***, 240 So. 3d at 480. It is not clear whether there actually was a preexisting agreement in ***Kushner***, but that was how the Georgia Court of Appeals described the cause of action: "Although he is not an insurer of the documents he drafts, the attorney may breach his duty towards his client when, after undertaking to accomplish a specific result, . . . he then fails to comply with prescribed statutory formalities or to *effectuate the intent of the parties*." ***Kushner***, 300 S.E.2d at 532-33 (internal quotation marks omitted) (quoting ***Berman v. Rubin***, 227 S.E.2d 802, 805 (1976)). And the only issue before the ***Kushner*** court was whether the client's having read and executed the negligently drafted instrument precluded a cause of action. ***Id.*** at 533-34. Thus, in both ***O'Brien*** and ***Kushner*** there was no dispute the other party to the transaction would have accepted different terms than those in the written instrument—because they already had. So this dispute about the legal standard is illusory; to be a "negligent drafting case," as Gulfport OB-GYN styles it, Dr. Daigle would have had to have already agreed to a more comprehensive noncompetition covenant than the one she actually executed. Gulfport OB-GYN does argue this, but, as we shall explain, the record does not support its claim. Instead, the record shows that the contract prepared by the defendant law firm was the only agreement between the parties.

6

¶10. The evidence must be viewed in the light most favorable to Gulfport OB-GYN as the nonmoving party to a summary judgment motion, and Gulfport OB-GYN is entitled to the benefit of reasonable inferences from the evidence. **Buckel v. Chaney**, 47 So. 3d 148, 156 (Miss. 2010). But the evidence here falls short even under that lenient standard. Gulfport OB-GYN relies on an affidavit attorney Blum submitted in the chancery case between Dr. Daigle and Gulfport OB-GYN.[1] Blum's affidavit described the employment negotiations with Conrad Meyer, Dr. Daigle's attorney. It stated that "Meyer requested that the covenant not to compete be eliminated," but that "[r]emoval of the covenant was not agreed upon, although revisions were made." The affidavit then goes on to note that, in an email[2] to Meyer, Blum expressed her understanding of the noncompetition covenant while discussing a related clause:

> The other shareholders do not have such an indemnification clause, and therefore they will not agree to this. This indemnification by Dr. Daigle is strictly in the event she ceases employment and pays the liquidated damages. ... All of the physicians have this clause, and it only relates to an event of termination/resignation followed by payment of liquidated damages in lieu of noncompetition.

Blum further stated in the affidavit, "Based upon my email of October 14, 2008, to Mr. Meyer, I believe the intent was that the covenant not to compete be effective in the event of termination or resignation, and that the statement of 'regardless of cause' in Paragraph 15(a) is evidence thereof."

---

[1] The chancery court ultimately found the noncompetition covenant inapplicable to Dr. Daigle's voluntary exit.

[2] The email itself is not in the record, but part of it is quoted in Blum's affidavit.

7

¶11. Gulfport OB-GYN argues that because neither Dr. Daigle nor her attorney, Meyer, disavowed Blum's representations about the contract, they must have agreed with Blum's interpretation. This argument is unconvincing; Meyer, as an attorney, surely knew the words used in the contract itself controlled, not a tangential recitation of the drafter's understanding. *See, e.g.*, ***Clark v. Neese***, 262 So. 3d 1117, 1126 (Miss. 2019).

¶12. Blum's affidavit fails to establish what Gulfport OB-GYN claims it does, that there was an agreement between the parties to execute a noncompetition covenant on terms other than those used in the contract. In fact, the record affirmatively suggests the opposite, that the proposed employment contract was tendered to Dr. Daigle's attorney early in the negotiations and that it, in actual fact, constituted the agreement between the parties. Every iteration of the noncompetition covenant contained the "following termination of her employment by the Employer" language Gulfport OB-GYN complains was negligently drafted.

¶13. Gulfport OB-GYN also asserts it would not have hired Dr. Daigle had she refused a more comprehensive noncompetition covenant. While it is true this would have allowed Gulfport OB-GYN to "avoid[] its damages because it would have never employed Daigle and litigated against her," as Gulfport OB-GYN argues, Gulfport OB-GYN also received the benefit of Dr. Daigle's services. There has been no showing this alleged loss of position caused damages to Gulfport OB-GYN.

¶14. Finally, Gulfport OB-GYN cites ***Temple Hoyne Buell Foundation v. Holland & Hart***, 851 P.2d 192, 198-99 (Colo. App. 1992), and ***First Interstate Bank of Denver, N.A.***

8

***v. Berenbaum***, 872 P.2d 1297, 1300 (Colo. App. 1993), in which panels of the Colorado Court of Appeals held that a claim of legal malpractice could arise when an attorney drafts a document with ambiguous language if "reasonably prudent attorneys should have foreseen that the likely result of its inclusion would be litigation." We are aware of no parallel holding in Mississippi law, and Gulfport OB-GYN offers no compelling argument in favor of this minority view that would essentially require attorneys to prepare litigation-proof documents. Indeed, Mallen and Smith's treatise on legal malpractice devotes an entire section to cautioning against adopting such a rule, which, in those scholars' view, would excessively burden attorneys and lead to excessive caution and worse, not better, legal services for clients. *See* 1 Ronald E. Mallen and Jeffrey M. Smith, *Legal Malpractice* § 8:23 (updated 2019) (specifically discussing ***Berenbaum***, 872 P.2d at 1300), Westlaw. We decline to adopt such a rule.

**CONCLUSION**

¶15.  Causation in a negligence-based legal-malpractice claim for a breach of the duty of care requires proof that, but for the attorney's negligence, a more favorable result would have been obtained. Thus, when the complaint is that the attorney should have proposed different or additional terms to a transaction, the malpractice plaintiff must show that such terms would have been accepted by the other party or that the client would not have entered into the deal and would have been better off for doing so. Absent such proof there exists no genuine issue of material fact as to causation of damages, and summary judgment is appropriate.

¶16. **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., MAXWELL AND BEAM, JJ., CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J., COLEMAN AND CHAMBERLIN, JJ.**

**GRIFFIS, JUSTICE, DISSENTING:**

¶17. Because a genuine issue of material fact exists as to causation, the circuit court erred in granting summary judgment against Gulfport OB-GYN. Therefore, I respectfully dissent.

¶18. Gulfport OB-GYN hired Dukes, Dukes, Keating & Faneca, P.A., to prepare an employment agreement, including a noncompetition covenant, regarding Dr. Donielle Daigle. The noncompetition covenant in Dr. Daigle's employment agreement stated as follows:

Covenant Not To Compete.

a.      Employee agrees that for a period three (3) years following termination of her employment *by the Employer*, regardless of cause (subject to Section 7(d)), she will not engage in any medical practice or perform any service directly or indirectly in competition with the medical practice of Employer, to include hospital staff positions, or have any interest in any capacity whatsoever in any enterprise that engages in such medical practice within a radius of fifty (50) miles from the Memorial Hospital at Gulfport, without the express written consent of the Employer. Further, during said three (3) year period, even if in compliance with the above fifty (50) mile radius provision, Employee agrees not to directly solicit, which includes, but is not limited to, direct mailing, emails, or telephone calls, either by Employee or any other person or entity acting on Employee's behalf, any patient who has been served by the Employer within three (3) years prior to the date her employment with Employer ends, whether by termination or resignation, or mutual agreement.

(Emphasis added.)

¶19. Gulfport OB-GYN contends that Dukes, Dukes, Keating & Faneca and attorney Je'Nell Blum negligently drafted the noncompetition covenant. Gulfport OB-GYN argues

10

that Blum's inclusion of the phrase "termination of [Dr. Daigle's] employment *by the Employer*" was negligent in that it allowed Dr. Daigle to compete with the clinic in the event of her resignation.

¶20.    To recover for legal malpractice, a plaintiff must prove four elements: (1) the existence of an attorney-client relationship, (2) acts constituting negligence, (3) that the negligent acts proximately caused the injury, and (4) damages. *Lane v. Oustalet*, 873 So. 2d 92, 98-99 (Miss. 2004).  It is undisputed that an attorney-client relationship existed between Dukes, Dukes, Keating & Faneca, Blum, and Gulfport OB-GYN.  Additionally, Gulfport OB-GYN's expert witness opined as follows:

> [T]he applicable standard of care required . . . Blum to draft the noncompete provision . . . to apply irrespective of the circumstances of Dr. Daigle's separation from employment at Gulfport OB-GYN . . . .  It is my opinion that . . . Blum breached the applicable standard of care by drafting [the noncompete provision] to apply only upon "termination of [Dr. Daigle's] employment <u>by the Employer</u>."  This poorly drafted language excluded coverage when Gulfport OB-GYN most expected it - upon Dr. Daigle's voluntary termination.

¶21.    "In order for an act of negligence to proximately cause the damage, the . . . negligence [must be] both the cause in fact and [the] legal cause of the damage." *Glover ex rel. Glover v. Jackson State University*, 968 So. 2d 1267, 1277 (Miss. 2007) (citing Dan B. Dobbs, *The Law of Torts* § 180 (2000)).  "A defendant's negligence is the cause in fact of a plaintiff's damage where the fact finder concludes that, but for the defendant's negligence, the injury would not have occurred." *Id.* (footnote omitted).  In a negligence-based malpractice action, a plaintiff must show proximate cause by the "so-called 'trial-within-a-trial' test." *Crist v. Loyacono*, 65 So. 3d 837, 842 (Miss. 2011).  In other words, "the client 'must show that, but

11

for [his] attorney's negligence, he would have been successful in the prosecution or defense of the underlying action.'" *Id.* (quoting *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1215 (Miss. 1996)). Legal cause means that "the damages must . . . [be] a reasonably foreseeable consequence of the defendant's negligence." *Glover*, 968 So. 2d at 1277.

¶22. In granting summary judgment, the circuit court found that it was "necessary to hear that but for [Blum's drafting] error there would have been an enforceable covenant not to compete." The circuit court reasoned that, "[a]bsent that necessary element . . . , [Gulfport OB-GYN] [could not] go forward . . . ." But this case differs from a traditional trial-within-a-trial case in which a plaintiff must show that but for his attorney's negligence, the underlying case would have been successful.

¶23. In a traditional legal-malpractice case, the attorney's negligence is not a factor in the underlying dispute. Here, Blum's negligence was a factor in the underlying dispute. Indeed, Blum's negligent drafting allowed Dr. Daigle to sue Gulfport OB-GYN and to argue that the covenant not to compete did not apply to her resignation and was therefore unenforceable.

¶24. In *Crist*, "[s]ixteen former clients sued two lawyers who had represented them in mass-tort litigation, claiming the lawyers had breached their fiduciary duty by prematurely settling their cases in order to maximize attorney fees." *Crist*, 65 So. 3d at 840. This Court noted that "we have never required a legal-malpractice plaintiff alleging breach of fiduciary duty to establish that, but for the breach, the plaintiff would have won the underlying case." *Id.* at 842. The Court stated,

> Because attorneys are afforded a degree of professional autonomy, proof of success in the underlying case is an appropriate test for proximate cause in a negligence-based action because it ensures that attorneys are only held professionally liable where their failures to adhere to the standard of care actually impacted the plaintiff's interests in the case. But an attorney's breach of his fiduciary duties to his client may cause injury to the client entirely separate from the merits of the underlying case.
>
> . . . .
>
> The fiduciary-duty claims . . . survive, even absent a showing that the plaintiffs would have won the underlying . . . lawsuit . . . .

*Id.* at 843.

¶25.    Although Gulfport OB-GYN did not allege a breach of fiduciary duty, it did allege that Blum's breach, i.e., her negligent drafting, "cause[d] injury to the client entirely separate from the merits of the underlying case." *Id.* Gulfport OB-GYN sued for damages caused by Dr. Daigle's lawsuit against it. Gulfport OB-GYN's attorneys' fees resulted from its litigation with Dr. Daigle. Dr. James Gaddy, with Gulfport OB-GYN, testified that Gulfport OB-GYN would not have had to defend the lawsuit filed by Dr. Daigle or had a judgment entered against it if Blum had properly drafted the agreement. Gulfport OB-GYN's expert witness agreed. Thus, it appears that the traditional trial-within-a-trial analysis does not apply to this negligent-drafting legal-malpractice case. In other words, because Gulfport OB-GYN presented evidence of injury entirely separate from the merits of the underlying case, its claims should survive, even absent a showing that it would have won the underlying lawsuit.

¶26.    However, even if the trial-within-a-trial analysis does apply, Gulfport OB-GYN has presented sufficient evidence to show that, but for Blum's error, there would have been an

13

enforceable covenant not to compete. Dukes, Dukes, Keating & Faneca and Blum assert that in order to show cause in fact and meet the but for test for proximate causation, Gulfport OB-GYN must show that Dr. Daigle would have accepted the noncompetition covenant without the negligent language at issue. In other words, Gulfport OB-GYN must show that Dr. Daigle would have accepted the noncompetition covenant without the inclusion of the phrase "following termination of her employment *by the Employer*." I respectfully disagree.

¶27. In support of their argument, Dukes, Dukes, Keating & Faneca and Blum rely on *Harrison v. Taft, Stettinius & Hollister, L.L.P.*, 381 F. Appx. 432 (5th Cir. 2010). In *Harrison*, the court found that "[w]here . . . legal malpractice is alleged in connection with a negotiation of contractual terms, a plaintiff must establish that the counter-party would have agreed to the additional or changed term(s) in the contract and that the inclusion of the term(s) would have put the plaintiff in a better position." *Id.* at 435. But *Harrison* is distinguishable from this case.

¶28. First, *Harrison* is an unpublished decision with no precedential value. *Id.* at 433 fn **. Additionally, *Harrison* applied Texas law. *Id.* at 434. Moreover, *Harrison* did not involve negligent draftsmanship, nor was there any evidence that the purchase agreement was contrary to the parties' intent. Indeed, the plaintiffs did not allege that their lawyers negligently drafted the purchase agreement. Instead, in *Harrison*, the plaintiffs alleged that their attorneys should have negotiated a better deal. *Id.* at 435-36. Plaintiffs' expert witness, "on several occasions . . . , unequivocally disclaimed opining on any issues of proximate causation." *Id.* at 435.

14

¶29. Unlike in *Harrison*, this case does not involve legal malpractice in connection with a negotiation of contractual terms. The parties' negotiation of the terms of Dr. Daigle's employment agreement is not at issue. Instead, this case involves legal malpractice in connection with negligent draftsmanship. Gulfport OB-GYN alleges that Blum negligently drafted the employment agreement and failed to adequately include her client's intent regarding the negotiated terms of Dr. Daigle's employment. Gulfport OB-GYN's expert opined that Blum's negligence proximately caused damages to the clinic. *Harrison* is simply inapplicable.

¶30. Dukes, Dukes, Keating & Faneca and Blum assert that "without evidence of [Dr. Daigle's] agreement to the alternate language, a jury is left to speculate on causation." But they are asking this Court to speculate on what Dr. Daigle would have done. This is not the standard. We do not know what Dr. Daigle would have done had the noncompetition covenant been properly drafted to require her resignation as well as her termination from employment. But what we do know is that Dr. Daigle signed the employment agreement and accepted the noncompetition covenant as negligently drafted by Blum. It is this signed and accepted agreement that we must consider. Considering that signed agreement, it is apparent that, but for Blum's drafting error, i.e., the inclusion of the phrase "by the Employer," the noncompetition covenant would have applied to both Dr. Daigle's resignation or termination. Thus, but for Blum's negligent drafting, the signed and accepted noncompetition covenant would have been enforceable against Dr. Daigle.

15

¶31.    Had Blum properly drafted the covenant not to compete, one of two things would have occurred: (1) Dr. Daigle would have refused to sign the agreement, in which case Gulfport OB-GYN would have avoided its damages because it would not have employed Dr. Daigle,[3] or (2) Dr. Daigle would have signed the agreement, in which case she would be unable to argue that she could compete with Gulfport OB-GYN upon her resignation.  Either way, Gulfport OB-GYN's damages were foreseeable and avoidable.  In my opinion, this satisfies the causation element of negligence.

¶32.    I do not find that this case falls within the traditional trial-within-a-trial analysis for purposes of proving cause in fact.  Nevertheless, the record shows that sufficient evidence was presented that "but for [Blum's drafting] error there would have been an enforceable covenant not to compete."  As a result, I would reverse the circuit court's entry of summary judgment and remand this matter for trial.

**KITCHENS, P.J., COLEMAN AND CHAMBERLIN, JJ., JOIN THIS OPINION.**

---

[3] Had Gulfport OB-GYN not employed Dr. Daigle, Dr. Daigle would not have resigned and sued Gulfport OB-GYN based on the covenant not to compete, and Gulfport OB-GYN would not have had to pay $425,000 to settle her claim nor would it have incurred more than $115,000 in attorneys' fees defending the case.

16